**Alfred L. DEUTSCH and Harold N. Finney, William A. Brown, Substituted as trustee for CMIT as debtor**

v.

**ST. PAUL TITLE INSURANCE CORP., a corporation, Defendant.**

**No. 78-795C(C).**

United States District Court, E. D. Missouri, E. D.

Oct. 3, 1979.

---

■■■■■■■■■■■■■■■■

G. Carroll Stribling, St. Louis, Mo., for plaintiff.

Robert C. Jones, Clayton, Mo., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, District Judge.

This matter was tried to the Court. The Court has been duly advised by depositions, exhibits, and briefs of the parties.

## FINDINGS OF FACT

1. Plaintiff is a citizen and resident of the State of Massachusetts, and plaintiff's predecessors, the Trustees of Citizens Mortgage Investment Trust ("CMIT"), a Massachusetts business trust, were citizens and residents of the State of Massachusetts. Defendant is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business located within the City of St. Louis, Missouri. There is complete diversity of citizenship among the parties hereto, and the matter in controversy herein exceeds $10,000.00 exclusive of interest and costs.

2. CMIT was at all times material herein involved in the investment and lending of money with respect to real estate developments. During 1974, CMIT provided construction financing to a large real estate development located in St. Charles County, Missouri, known as Lake Saint Louis, pursuant to a master loan agreement between plaintiff and Lake Saint Louis Estate Company ("Developers").

3. CMIT effected its construction financing to the Developers by making loans secured by deeds of trust and mortgages covering various parcels of real estate forming all or a part of this development.

4. In connection with such construction financing, CMIT employed the services of defendant.

5. In connection with CMIT's supplying of construction financing for the Lake Saint Louis Development, it purchased from defendant its policy of title insurance number M–144926 insuring CMIT's interest in the Lake Saint Louis Development pursuant to CMIT's deeds of trust and mortgages thereon.

6. On or about March 20, 1974, for value received, defendant issued to plaintiff its mortgage policy of title insurance number 144926 insuring, among other things, the lien of plaintiff CMIT's mortgage and deed of trust in the Lake Saint Louis Development against:

> "Any statutory lien for labor or material which now has gained or may gain priority over the lien of the insured mortgage, except any such lien arising from an improvement on the land contracted for and commenced subsequent to the date of Policy. . . . "

7. CMIT advanced loan funds for construction costs against "draw requests" submitted by the developers of the Lake Saint Louis Development to CMIT. Upon CMIT's approval of the draw requests, loan proceeds were transferred to defendant which then disbursed said monies to the proper parties.

8. As each disbursement was made, CMIT requested and received from defendant endorsements to the original title insurance policy, which updated the insurance against liens as of the date of a given disbursement, and raised the face amount of the policy coverage to the total balance of disbursements as of that date also.

9. The disbursements made by defendant of construction finance monies advanced to defendant by CMIT were made properly.

10. During the period from March 20, 1974, through July 16, 1974, CMIT made nine advances of funds to defendant and defendant issued nine endorsements to CMIT, insuring against liens as of the date of each such disbursement, and increasing the dollar coverage of the title insurance policy to the dollar amount expended by CMIT on that date as well.

11. On or about July 16, 1974, CMIT received a draw request from the developer in the amount of $166,704.00 and the request of the developer for cash disbursements for its payroll in the amount of $18,-894.45 for a total of $185,598.45.

12. Pursuant to said draw request, on July 29, 1974, CMIT wire transferred to defendant's construction escrow account the amount of $185,598.45 and on that day sent to defendant a letter of instructions for disbursement of same. This letter, dated July 29, stated that dispersal was to be made when defendant was "in a position to

1) insure plaintiff's advance as being a first and best lien,

2) insure that there are no liens of record or that defendant has insured over any such liens, and

3) issue defendant endorsement number 10."

13. On July 30, 1974, defendant disbursed the $185,598.45 which had been wire transferred to it by CMIT on July 29, 1974, in payment of the aforesaid draw request and the $18,894.45 payroll requirement of the developer of the Lake Saint Louis Development.

14. On October 30, 1975, defendant issued its endorsement number 10 to its title insurance policy number M–144926, advanc-

ing the effective date of such policy not only to the date of the previous draw request, but to the date of disbursement of the $185,894.45, i. e., July 30, 1974, at 8:00 A.M. That endorsement raised the amount insured against in the policy to include the amount disbursed, $185,598.45.

15. Prior to the issuance by it of its policy of title insurance number M–144926 and endorsements 1 through 10 thereof, defendant had received and had in its possession a copy of the master loan agreement which explained the total financial relationship between plaintiff and developer.

16. When defendant issued its endorsement number 10 on October 30, 1975, which insured against mechanic's liens arising prior to July 30, 1974, it was aware that work had been performed between July 16–30, 1974, which had not been billed or included in the July 16 draw request.

17. Subsequent to July 30, 1974, CMIT declared a default under the terms of its master loan agreement with the developers of the Lake St. Louis Development in St. Charles County, Missouri, for their nonpayment of interest due plaintiff on loans advanced to developer.

18. Through no fault of plaintiff, default under the terms and conditions of said master loan agreement existed due to the actions of developers, and that CMIT was entitled to claim such default and to refuse to further fund its construction loan for the Lake St. Louis Development.

19. Subsequent to July 30, 1974, CMIT demanded immediate repayment by the developer of all monies loaned to the developer for construction financing.

20. On November 14, 1974, and November 25, 1974, S & S Utility Contracting Company ("S & S"), a subcontractor upon the Lake Saint Louis Development in St. Charles County, filed a mechanic's lien with the circuit court clerk of St. Charles County, Missouri. Such lien concerned work performed and materials provided to developers' Lake Saint Louis project, title to which had been insured by defendant. Contained within S & S's claim for a mechanic's lien

were claims for work and materials provided to the developer occurring prior to July 30, 1974, at 8:00 A.M., in the total amount of $35,713.66.

21. On or about December 9, 1974, Kienstra Ready-Mix of O'Fallon ("Kienstra"), a subcontractor on the Lake Saint Louis Development, filed a mechanic's lien with the circuit court clerk of St. Charles County, Missouri. Such lien concerned work performed and materials provided to developer's Lake Saint Louis project, title to which had been insured by defendant. Contained within Kienstra's claim for a mechanic's lien was a claim for work and materials provided to the developer occurring prior to July 30, 1974, at 8:00 A.M., in the total amount of $5,951.27.

22. On May 31, 1975, and March 31, 1975, respectively, S & S and Kienstra filed crossbills against plaintiff in a then pending lawsuit in the Circuit Court for St. Charles County entitled *Ashland Oil, Inc., a Corporation v. R. T. Crow, et al.* (Cause Number 13608), seeking to enforce their mechanic's lien claims in the total amount of $41,694.93, and to have them declared superior to the lien of the deed of trust of CMIT in respect of the Lake Saint Louis Development.

23. The statements and claims for mechanic's liens filed by S & S and Kienstra were not defective in any substantial manner and were entitled to enforcement in the litigation pending in the St. Charles County Circuit Court.

24. Prior to June 24, 1975, CMIT tendered defense of the crossbills of S & S and Kienstra to defendant and demanded that defendant defend said crossbills and discharge said liens and claims; however, on or about June 24, 1975, defendant declined such tender, and has continued to refuse to defend against said liens.

25. Subsequent to such refusal, CMIT employed counsel, Richard Straub of the city of St. Louis, who entered his appearance on behalf of CMIT and negotiated a settlement of the crossbills of S & S and Kienstra in the amounts of $27,701.35 and $4,612.23 respectively, for a total payment

of $32,313.58. In addition, CMIT paid court costs in respect of said crossbills in the sum of $350.00 and attorney's fees of $1,796.25.

26. Plaintiff has demanded from developer only repayment on loans advanced to developer, and not for amounts in settlement of the two liens filed for work done to the benefit of developer.

27. Plaintiff and developer are currently engaged in proceedings for reorganization under Chapter 10 of the Bankruptcy Laws of the United States.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter of this cause and the parties hereto under 28 U.S.C. § 1332.

2. Defendant's policy of title insurance number M–144926 and endorsements numbers 1 through 10 thereof were validly issued by defendant for adequate consideration and are enforceable in accordance with their terms.

3. Defendant's policy of title insurance number M–144926 herein together with endorsement number 10 insured the lien of CMIT's deed of trust with respect to the Lake Saint Louis Development against any statutory lien for labor or material which, as of 8:00 A.M., July 30, 1974, had gained or thereafter might gain priority over the lien of the insured mortgage concerning in whole or part improvements contracted for prior to July 30, 1974, or financed by proceeds of defendant's construction financing.

4. The mechanic's liens of S & S Utility Contracting Company and Kienstra Ready-Mix of O'Fallon concern statutory liens for labor and material which, absent discharge by CMIT, would have gained priority over the lien of CMIT's insured mortgage. Further, such mechanic's liens, to the extent of $35,743.66 in the case of S & S Utility Contracting Company and $5,951.27 with respect to Kienstra Ready-Mix of O'Fallon, concerned improvements on the land contracted for and financed by proceeds of the indebtedness secured by insured mortgage and completed prior to July 30, 1974.

5. The Court finds that under Missouri law the terms of an insurance policy are to be strictly construed against the insuror, not liberally construed in its favor in order to give rise to implied agreements not set forth in the policy. *Ranger Ins. Co. v. Mercantile Trust Co.*, 363 F.Supp. 795 (E.D. Mo.1973).

6. Defendant's contention that plaintiff's foreclosure action against developers caused the lien to arise is not supported by the evidence in that neither the title insurance policy nor the master loan agreement creates an obligation for plaintiff to continue funding developer after its default in order to avoid the filing of liens.

7. The Court finds that under Missouri law defendant bears the burden of establishing facts necessary to support a claimed exclusion from coverage, and that defendant has failed to meet this burden. *Johnson v. Central Mutual Insurance Ass'n*, 346 Mo. 818, 143 S.W.2d 257 (1940).

8. Pursuant to defendant's policy of title insurance, it was defendant's duty to thoroughly investigate the existence of any liens on the subject property and, at its cost to defend and discharge the mechanic's lien claims of S & S Utility Contracting Company and Kienstra Ready-Mix of O'Fallon, and defendant's failure and refusal to do so was in breach of its policy of title insurance.

9. As a consequence of said breach, plaintiff is entitled to repayment to it of the lien settlement costs of $27,701.35 paid to S & S Utility Contracting Company, $4,612.23 paid to Kienstra Ready-Mix of O'Fallon, with interest thereon at the rate of six percent (6%) from June 24, 1975; to $1,796.25 paid to counsel for legal fees in settlement of the liens, and to $350.00 paid as court costs.

10. The Court finds that each of the purported four defenses raised by defendant to plaintiff's claim is without merit and has no factual basis. This Court concludes that no factual basis presently exists for the assertion of any such defense.

**1046**

11. This Court concludes that the failure of defendant to pay and discharge its obligations to CMIT in respect of its policy of title insurance has not been vexatious and without just cause and excuse and, therefore, this Court finds that plaintiff is not entitled to recovery pursuant to V.A.M.S. § 375.420.

12. Consequently, plaintiff is entitled to judgment against defendant in the amount of $32,313.58, plus interest on this amount at the rate of six percent (6%) from June 24, 1975, and lien settlement costs and fees of $350.00 and $1,796.25 respectively. Plaintiff's attorney's fees in bringing this action are denied. Costs of this action are assessed against defendant.