AMERICAN SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant,

v.

LAWYERS TITLE INSURANCE CORPORATION, Defendant-Appellee.

No. 84–5892.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1985.

Decided June 19, 1986.

Geoffrey D. Kressin, Knoxville, Tenn., Robert Craddock, Memphis, Tenn. (argued), for plaintiff-appellant.

James A. Ridley, III (argued), Kramer, Johnson, Rayson, McVeigh and Leake, Knoxville, Tenn., for defendant-appellee.

Before ENGEL and MERRITT, Circuit Judges; and GIBBONS, District Judge.*

ENGEL, Circuit Judge.

Appellant American Savings and Loan Association appeals a judgment of the United States District Court for the Eastern District of Tennessee in favor of defendant Lawyers Title Insurance Corporation. Tennessee law governs in this diversity action for breach of a contract of title insurance. We conclude that the losses incurred by American were covered by the insurance policy and not excluded as a risk "created, suffered, assumed or agreed to" by American.

I.

In 1982 American loaned $1,000,000 to a group engaged in the construction of a housing complex whose previous arrangements for financial backing had failed midway through the construction project. This sum was estimated to be the completion cost of the project, but in any event the borrowers guaranteed the commitment of any additional funding. To secure the loan American received a deed of trust executed by the borrowers. At the recording of this deed it was superior to any other recorded lien. At the same time, American acquired title insurance, policy No. 82–79–007065, from Lawyers Title Insurance Corporation. Both American and Lawyers Title were aware at the time the policy was issued that American's lien, un-

* Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennes-

see, sitting by designation.

der Tennessee law, could become subordinate to liens subsequently recorded by subcontractors, material furnishers and laborers.

The construction project subsequently encountered further difficulties with the result that it could not pay in full its debts to subcontractors, material furnishers and laborers who then filed notices of liens. These liens gained priority to American's lien under Tenn.Code Ann. § 66–11–104 (1982). American ultimately settled these lien claims and consequently acquired title to the development property, which it then sold to a third party.

American sought recovery from Lawyers Title, and following Lawyers Title's refusal, brought suit for breach of the title insurance policy seeking damages in the sum of $105,943.00. This sum represented the difference of American's liabilities, including the loan principal and interest and the amount expended by American in paying off the mechanics' liens, less the amount received by American from its sale of the construction site. The case was tried before a magistrate on stipulated facts. Relying on *Brown v. St. Paul Insurance Corp.*, 634 F.2d 1103 (8th Cir. 1980), and *Bankers Trust Co. v. Transamerica Title Ins. Co.*, 594 F.2d 231 (10th Cir.1979), the magistrate found that, by loaning funds for a construction project that it knew might be underfunded, American suffered, assumed or agreed to the priority of the liens within the meaning of the exclusionary clause of the insurance contract. He therefore held that the insurance policy did not cover losses due to the underfunding. On appeal, American contends that *Brown* and *Bankers Trust* are inapposite because of differences in the facts and law relevant to those cases.

The policy issued by Lawyers Title provided:

Lawyer's Title Insurance Corporation ... insures ... against loss or damage ... sustained or incurred by the insured by reason of:

.    .    .    .    .

6. The priority of any lien or encumbrance over the lien of the insured mortgage;

7. Any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage, except any such lien arising from an improvement on the land contracted for and commenced subsequent to Date of Policy not financed in whole or in art by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance....

The policy expressly excluded coverage for:

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant....

Lawyers Title contends, and the magistrate agreed, that the mechanics' liens in this case were excluded from coverage under the policy by this latter exclusion in paragraph 3.

It is generally recognized that title insurance does not insure against prospective risks.

[T]itle insurance operates to protect a purchaser or mortgagee against defects in or encumbrances on title which are in existence at the time the insured takes his title. *Mayers v. Van Schaick*, 197 N.E. 296 (1935); *Trenton Potteries Co. v. Title Guarantee & Trust Co.*, 176 N.Y. 65, 68 N.E. 132 (1903); *Strass v. District-Realty Title Insurance Corp.*, 31 Md.App. 690, 358 A.2d 251, *cert. denied*, 278 Md. 736 (1976); *Butcher v. Burton Abstract Title Co.*, 52 Mich.App. 98, 216 N.W.2d 434, *cert. denied*, 419 U.S. 998 [95 S.Ct. 314, 42 L.Ed.2d 273] (1974); 9 Appleman, Insurance Law and Practice, ¶ 5208 at 9 (1943). "It is not prospective in its operation and has no relation to liens or requirements arising thereafter." *Mayers v. Van Schaick, supra.* "The risks of title insurance end where the risks of other kinds begin. Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance

of the policy is designed to save him harmless from any loss through defects, liens, or encumbrances that may affect or burden his title when he takes it." *Trenton Potteries v. Title Guarantee & Trust Co., supra.*

*National Mortgage Corp. v. American Title Insurance Co.,* 299 N.C. 369, 261 S.E.2d 844 (1980).

Additionally, it is often appropriate to assume that business people experienced in the transactions in which they are engaged intend to accept the risks that can be reasonably expected to arise from those transactions. Accordingly, it may not be improper to assume that American, a relatively sophisticated commercial lending concern, intended to accept the risk that the developer would not obtain the additional financing, and that mechanics' liens, which would gain priority over American's deed of trust, could arise against the property. Nevertheless, the general rules of insurance contract construction, as well as the extreme breadth of the exclusion under Lawyers Title's interpretation, militate against the construction offered by Lawyers Title and accepted by the magistrate.

Tennessee law holds that an insurance contract must be construed as a whole, *English v. Virginia Surety Co.,* 196 Tenn. 426, 268 S.W.2d 338 (1954), and specifically directs that "the insuring clause and exceptions thereto should not be considered separately, but as parts of a whole...." *White v. State Farm Mut. Auto Ins. Co.,* 59 Tenn.App. 707, 443 S.W.2d 661, 666 (1979). Further, under Tennessee law, exclusionary clauses are to be strictly construed against the insurer. *Palmer v. State Farm Mut. Auto Ins. Co.,* 614 S.W.2d 788 (Tenn.1981). Guided by these rules of construction, we do not believe that the risk that service, labor or materials liens would arise because of underfunding on the project, was a risk excluded from coverage as a risk which American "suffered, assumed or agreed to."

The magistrate appears to have assumed that, but for the exclusionary clause, losses due to service, labor, or materials liens would have been covered by the policy. Accordingly, he construed only the exclusionary clause and applied the rule that a claimant has the initial burden of proving that he comes within the insuring terms of an insurance policy and conversely, the insurer carries the burden if it claims that one of the policy exclusions prevents recovery. *Farmers Bank & Trust Co. v. Transamerica Ins. Co.,* 674 F.2d 548 (6th Cir. 1982). Tennessee law, however, forbids a construction of the exclusionary clause in isolation from the rest of the contract.

A review of the insuring clause reveals that the parties insured against the possibility that under Tennessee law liens for service, labor and materials, although recorded after American's lien, could become senior to American's lien by relating back to the time that the construction project commenced. That clause expressly insures against "[a]ny statutory liens for labor or materials which ... *hereafter may gain priority* over [American's lien]." (Emphasis added). True, that clause excepts from its coverage "any such lien arising from an improvement on the land contracted for and commenced subsequent to Date of Policy not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance...." But the liens which ultimately encumbered the construction site did not fall within this exception for they resulted from work which was a part of the project for which American's loan was advanced.

The parties' negotiations over contract terms further support the conclusion that the insuring clause was intended to cover the losses suffered here. The stipulation of facts states that when it approached Lawyers Title's agent, American sought a title insurance policy without a lien exception and Lawyers Title's agent responded that such a policy could be issued if the borrowers indemnified Lawyers Title. The initial commitment for title insurance issued by Lawyers Title excluded from coverage liens arising out of services, labor or

materials provided unless the borrowers agreed to indemnify Lawyers Title against losses arising from such liens.

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:

. . . . .

5. Any lien, or right to a lien, for services, labor or material heretofore or *hereafter furnished,* imposed by law and not shown by the public records. NOTE: This item will be deleted upon receipt of Indemnity Bond from Harold D. Wilson and wife, Charlotte A. Wilson, and Frank Cansler and wife, Virginia Faye Cansler.

(Emphasis added). The borrowers provided the required indemnity bond and the cited exception does not appear in the final insurance contract.

Thus, not only did the parties intend the insurance contract to cover the risk of subsequent statutorily superior services, labor and materials liens, but Lawyers Title received specific consideration for insuring that risk. We do not agree with the magistrate and Lawyers Title that what was so clearly intended to fall within the coverage of the insuring clause was also excluded from coverage by the exclusionary clause. The Supreme Court of Tennessee has warned against creating such conflicts between contract terms: "The courts cannot create an ambiguity where none exists." *In re Estate of Clement,* 220 Tenn. 114, 414 S.W.2d 644, 646 (1967). It has further cautioned against relieving an insurer of a once attractive decision that has soured.

Insurers, just as other makers of contracts, are dependent upon the fiscal attractiveness of their proposals in order to induce would be purchasers to buy. In the case of insurance, the attractiveness, necessary to induce buyers, is found in the broadness of coverage, or the lack of limiting conditions. Where an insurer, with due regard to its own financial liability, writes the contract without certain limiting conditions, and thereby hopefully enhances his selling position, the Court will refuse to then withhold from the buyer the coverage for which he has contracted by adding conditions unwarranted by a reasonable construction of terms of the policy as issued.

*Swindler v. St. Paul Fire & Mar. Ins. Co.,* 223 Tenn. 304, 444 S.W.2d 147, 150 (1969). In the present case these principles inform against a broad construction of the exclusionary clause phrase "created, suffered, assumed or agreed to."

Moreover, the construction of the exclusion offered by Lawyers Title, if applied to all the risks incident to the loan transaction, would nearly eliminate the policy's coverage altogether. Lawyers Title would have this court read the phrase "created, suffered, assumed or agreed to" to encompass risks that American must have recognized were incident to its loan transaction. In this manner, Lawyers Title reasons, American accepted the risk that the developer would not fulfill its obligation to obtain sufficient financing and thereby "created, suffered, assumed or agreed to" the mechanics' liens that ensued. We see no reason or principled manner to limit this reasoning to the risk of future liens caused by underfunding. It is equally applicable to the risk that a lien would arise if the developer had absconded with the loan funds or if the loan funds had not been properly disbursed, yet the magistrate stated that both of those risks would be covered by the title policy. Such reasoning, carried to an extreme, would exclude any liens that gained priority to American's lien. That cannot be the result of a proper construction of the policy.

The Tennessee rule ... appears to be that the determination whether an exclusion clause will be given effect depends, not only on the language of the provision, but also on whether, if the clause is given effect, the insurer, in light of its knowledge of the policyholder's business, would fail to provide the coverage that might reasonably be expected.

*Insurance Co. of N. Am. v. Federated Mut. Ins. Co.,* 518 F.2d 101, 105–06 (6th Cir.1975).

Finally, according to the general application of the terms, American cannot be held to have suffered or assumed the risk of future service, labor or materials liens by financing only a portion of the construction project rather than funding the full actual completion cost. Although no Tennessee cases construe the terms "created, suffered, assumed or agreed to" in the context of title insurance exclusions, their meaning is fairly well established in other jurisdictions.

The term "created" has generally been construed to require a conscious, deliberate and sometimes affirmative act intended to bring about the conflicting claim, in contrast to mere inadvertence or negligence. *Hansen v. Western Title Ins. Co.*, 220 Cal. App.2d 531, 33 Cal.Rptr. 668, 671 (1963); *see also Arizona Title Ins. & Trust Co. v. Smith*, 21 Ariz.App. 371, 519 P.2d 860 (1974).[1] Similarly, the term "suffered" has been interpreted to mean consent with the intent that "what is done is to be done," *First Nat. Bank & Trust Co. v. New York Title Ins. Co.*, 12 N.Y.S.2d 703, 171 Misc. 854 (N.Y.Sup.Ct. 1939), and has been deemed synonymous with "permit," which implies the power to prohibit or prevent the claim from arising. *Arizona Title Ins. & Trust Co. v. Smith*, 21 Ariz.App. 371, 519 P.2d 860 (1974). Further, an insured does not assume an assessment against property "merely because he agreed to take the property 'subject to' any assessments." *Id.* at 863. "Assume," under this definition requires knowledge of the specific title defect assumed. *See also McLaughlin v. Attorneys Title Guaranty Fund*, 61 Ill.

App.3d 911, 18 Ill.Dec. 891, 378 N.E.2d 355 (1978). And "agreed to" carries connotations of "contracted," requiring full knowledge by the insured of the extent and amount of the claim against the insured's title. As with the other terms, this definition implies some degree of intent.

The Eighth Circuit summarized these definitions:

> The cases discussing the applicability of the "created or suffered" exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances in the course of purchasing the property involved. The courts have not permitted the insurer to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss.

*Brown v. St. Paul Title Ins. Co.*, 634 F.2d 1103, 1107–08 n. 8 (8th Cir.1980).

Moreover, the application of exclusionary clauses such as the one at issue here often turns on notions of equity. To the extent that an insured has breached an obligation or would derive a windfall profit from recovery against its insurer, courts are more inclined to find that the insured created, suffered, assumed or agreed to the defect, lien or encumbrance. *Cf. Brown*, 634 F.2d 1103; *Bankers Trust*, 594 F.2d 231.

Given these definitions and the equitable character of their application, American

---

**1.** In *Hansen*, the court held that the insureds' signing of an ambiguous document that could, if read unfavorably to the insured, cloud their title, did not create the claim that subsequently arose out of that ambiguity against the insureds' title. The insureds' act, which produced a risk that an adverse claim would arise was not within the "created or suffered" exclusion of that policy. In reaching this conclusion, the court explained its understanding of the word "created:"

> We believe the word "created" means conscious, deliberate causation, and that if the word is also susceptible of the significance of bringing out a result inadvertently or negli-

gently, we should accept the interpretation which is more favorable to the insured. One speaks of a person as "creative" if he is inventive and intelligently original and productive, not if he blunders, or is negligent, and thus causes or allows unintended difficulties.

*Hansen*, 33 Cal.Rptr. at 671.

At oral argument counsel for Lawyers Title conceded that American has not created or agreed to the mechanics' liens within the meaning of the policy. The only terms actually at issue, then, are "suffered" and "assumed." We have discussed the others, however, to show the universality of the intent requirement.

cannot be deemed to have suffered or assumed the mechanics' liens. Certainly, it did not expressly suffer or assume them.[2] American cannot be considered to have expressly created, suffered, assumed or agreed to mechanics' liens, when it sought assurances against those liens, simply because those assurances turned out to be insufficient. Lawyers Title argues, however, that American implicitly suffered or assumed the mechanics' liens that it settled by not assuring that there was adequate funding to complete the construction project. We disagree. American will not derive a windfall profit from insurance recovery since it put the full amount of its loan commitment at risk, it had no committed funds left with which to satisfy the lien claims, it has liquidated the security properly, and it seeks only losses in excess of the liquidation amount. It is also not guilty of any wrongdoing since it fulfilled the obligations of its loan agreement.

The magistrate reasoned that the policy insured against the risk that the loan proceeds would be improperly applied. He reasoned, though, that the "business" risk that the developer would fail to obtain adequate financing in violation of the loan agreement and that material suppliers consequently would not be paid and would achieve prior liens is one that the lender typically bears. The magistrate, in applying the exclusion to the present case, relied heavily on *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103 (8th Cir.1980), and *Bankers Trust v. Transamerica Title Ins. Co.*, 594 F.2d 231 (10th Cir.1979). However, the specific holdings of these two cases, while consistent with the general trend of authority, do not support a finding that the mechanics' liens at issue here were suffered or assumed by American.

*Brown* is typical of the general rule that recovery on title insurance is denied under an exclusion such as the one at issue when the insured is guilty of some misconduct or breach of its obligations which gave rise to the defect, lien or encumbrance. In *Brown* the lender did not pay out all of the funds it was committed to loan. Since full payment could have satisfied the lien claims against the property, the lender's failure to pay satisfied the definitional requirement of the term "created."

*Bankers Trust*, on the other hand, relies on the definition of the term "suffer." The court there denied recovery when the insured failed to disburse committed funds to prevent the defects, liens or encumbrances from arising, even though the insured was not strictly obligated to take those steps. This comports with *Arizona Title's* definition of "suffer" as synonymous with the word "permit" which implies the power to prohibit or prevent a lien that has not yet been exercised. Further, although Bankers Trust did not breach a duty in that case, it would have derived a windfall profit from any insurance recovery since recovery in that case would have given Bankers Trust the full value of the improvements on its collateral without requiring Bankers Trust to pay for them with funds committed to the project and since disbursal of the loan could have resolved the lien claims.

Relying on the Eighth Circuit's decision in *Brown*, the magistrate here reasoned that placing upon Lawyers Title the risk that the developers would not obtain sufficient additional financing to pay their material suppliers once loan funds were expended "would place title insurers 'in the untenable position of guaranteeing payment of work for which loan funds were never ad-

---

**2.** In circumstances analogous to these, the court in *National Mortgage Corp. v. American Title Ins. Co.*, 41 N.C.App. 613, 255 S.E.2d 622 (1979), *rev'd on other grounds*, 299 N.C. 369, 261 S.E.2d 844 (1980), held that the terms assumed or agreed to were clearly inapplicable where the insured lender specifically demanded, as a precondition to granting the loan, that the fee owners subordinate their interest to the insured's deed of trust.

The insured, in this case, cannot be said to have "assumed" or "agreed to" a defect (the failure of the subordination agreement to remain effective) when it specifically sought to have the fee interest subordinated to its leasehold interest in order to obtain the loan and title insurance.

*Id.* at 624.

vanced.'" However, in *Brown* the loan funds were not advanced, even though they had been committed under the loan agreement. If the Eighth Circuit in *Brown* had allowed recovery under those circumstances the insurer there would have, in effect, settled claims and paid for improvements for which Citizens had contracted to pay, was obligated to pay and was capable of paying. In other words, the insurer would have been in the unenviable position of insuring against events over which the insured had responsibility and control. The same holds true for the Tenth Circuit in *Bankers Trust.*

Nevertheless, in the present case, allowing American to recover from its insurer would not make Lawyers Title the guarantor of work for which loan funds were committed but never advanced, but rather, the guarantor of work for which loan funds were never committed. The insurer would not be insuring against events that the insured could and was obligated to prevent, but would be insuring against events that were beyond the control of the insured and that lay within the control of the developer. In essence, the insurer would, among other things, be insuring against the risk that the developer would not fulfill its obligation to obtain sufficient additional financing. This is the type of risk that insurance policies typically cover, the risk that another party, beyond the insured's control would fail to perform its obligations with injury resulting to the insured. By obtaining an indemnity bond from the developers and deliberately deleting the condition of the initial commitment from the terms of the policy ultimately agreed upon, Lawyers Title plainly assumed as part of the insurance contract the risk of loss which ultimately occurred.

### III.

Based upon our conclusions that the insuring clause specifically contemplates the type of loss suffered here, that Lawyers Title received the indemnification against this risk that it demanded, that any other reading would nearly negate the provision insuring against liens, and that American's actions do not satisfy the definition of the phrase "created, suffered, assumed, or agreed to," we hold that this title insurance policy insured American against the risk that subsequent liens for services, labor or materials would gain priority to its lien securing the construction loan.

Reversed and remanded for further proceedings consistent with this opinion.