**MID–SOUTH TITLE INSURANCE CORPORATION, et al.,
Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION as Receiver of Mid–America Federal Savings & Loan Association, Defendant.**

No. 90–2817–TUA.

United States District Court,
W.D. Tennessee, W.D.

Nov. 24, 1993.

W. Rowlett Scott, Armstrong, Allen, Memphis, TN, for plaintiffs.

Lancelot L. Minor, III, Dyer, James & Taylor, Memphis, TN, for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

TURNER, District Judge.

Plaintiffs Mid–South Title Insurance Corp. ("Mid–South") and Lawyers Title Insurance

Corp. ("Lawyers") have filed this action pursuant to 28 U.S.C. §§ 2201 & 2202 against Mid–America Federal Savings & Loan Association ("Mid–America") seeking construction of the terms of a mortgagee's title insurance policy they issued to Mid–America's predecessor in interest. Diversity jurisdiction exists under 28 U.S.C. § 1332. Plaintiffs seek, inter alia, a declaration of their duties under such terms, damages, costs, and interest. Defendant answered and counterclaimed for a declaration of its rights under the same title insurance policy. By agreed order filed March 29, 1991, Resolution Trust Corporation ("RTC") succeeded to the interests of Mid–America and was substituted as the defendant/counter-plaintiff. Presently before the court are cross-motions of the parties for summary judgment.

## I.

According to the undisputed facts established by the pleadings and stipulations of the parties, Cardinal Industries Mortgage Company ("Cardinal Mortgage") was the construction lender for a project built in Memphis, Tennessee by Cardinal Retirement Village of Memphis, Limited Partnership ("the Partnership"). The Partnership executed a Construction Deed of Trust to secure a Promissory Note dated June 22, 1988, in the principal amount of $9,800,000. Additionally, Cardinal Mortgage and the Partnership executed a Construction Loan Agreement specifying, inter alia, the schedule for disbursement of the construction loan proceeds. Such disbursements by the lender were made directly to the Partnership.

Contemporaneous to the execution of these documents between Cardinal Mortgage and the Partnership, plaintiffs issued the mortgagee's title insurance policy to Cardinal Mortgage which is the subject of this suit.[1]

The policy issued by plaintiffs provided in pertinent part:

[1] Schedule A of the policy indicates that it was issued at Memphis, Tennessee. Therefore, the court will construe the policy terms applying Tennessee law. The parties have not suggested that any other law is controlling.

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, ... the Companies, jointly and severally insure, ... against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Companies may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

....

2. Any defect in or lien or encumbrance on such title;

....

6. the priority of any lien or encumbrance over the lien of the insured mortgage;

7. Any statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage, except any such lien arising from an improvement on the land contracted for and commenced subsequent to Date of Policy not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance....

The policy expressly excluded from coverage:

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by insured claimant; ... (c) resulting in no loss or damage to the insured claimant....

The policy thus did not exclude unrecorded mechanics' liens which subsequently arose out of the construction project funded by Mid–America's loan.[2]

Cardinal Mortgage subsequently assigned the promissory note, deed of trust, and loan agreement to Mid–America and the title policy was amended by endorsement on June 28, 1988, changing the insured from Cardinal Mortgage to Mid–America.

In addition to execution of these documents and agreements, Cardinal Industries, Inc. ("Cardinal"), the Partnership's general

[2] Under Tennessee law, a mechanic's or materialman's lien may gain priority over an earlier recorded lender's deed of trust if work on the project visibly commenced prior to the filing of the deed of trust. See Tenn.Code Ann. § 66–11–104.

partner, had previously entered into a Revolving Indemnity Agreement with Lawyers on the premise that Cardinal wanted title insurance which did not except unfiled mechanics' liens. Lawyer agreed to accept that risk provided that Cardinal would indemnify Lawyers for any unfiled mechanics' liens arising subsequent to the issuance of a title policy. Cardinal was required to notify Lawyers of its decision to include the project under the agreement in its letter requesting a title policy for such project.[3] By letter dated April 19, 1988, Cardinal designated the Cardinal Retirement Village of Memphis project for inclusion under the agreement.

In four installments from June to October 1988, Mid–America disbursed funds to the Partnership aggregating $8,028,000 against the $9,800,000 construction loan agreement. Per the terms of the agreement, a draw of $892,000 was scheduled at the completion of all construction which was anticipated to be in January 1989.[4]

When Mid–America sought an endorsement under the title policy from plaintiffs prior to disbursing this construction completion draw, plaintiffs informed Mid–America that several materialmen's and mechanics' liens had been filed. Mid–America refused to make the disbursement. The Partnership subsequently defaulted on their payments under the loan. Pursuant to the terms of the deed of trust, the note was accelerated and the deed of trust was foreclosed. At the substitute trustee's foreclosure sale in July 1989, Mid–America purchased the property with a bid of $7,200,000. Mid–America then completed the project at a cost of $502,026.79.

Several lien claimants filed suits alleging priority over the deed of trust under *Tenn. Code Ann.* § 66–11–104 while contending that the "visible commencement of operations" on the project occurred prior to the recording of the deed of trust on June 23,

1988. Mid–America asserted coverage under the terms of the title policy and demanded that plaintiffs defend against such suits. Plaintiffs defended, reserving all rights, and ultimately settling several of the actions at a cost of $141,806.54; $53,331.87 in outstanding lien claims were still pending at the time the motions for summary judgment were filed.

## II.

Plaintiffs contend that inasmuch as $892,000 in funds remained undisbursed under the original construction loan when the Partnership defaulted, and because the total cost to cure the mechanics' liens and complete the project was less than that amount, defendant has not suffered any loss or damage which is necessary for policy coverage. Furthermore, plaintiffs contend that if they are made to pay such liens, defendant will receive a windfall profit because it will have gained the benefit of the work without paying for it. Finally, plaintiffs contend that such matters were excluded from coverage under the title insurance policy inasmuch as they were "defects, liens, encumbrances, adverse claims or other matters ... created, suffered, assumed or agreed to by [Mid–America or] resulting in no loss or damage to [Mid–America]." *See* Exhibit A to Plaintiffs' Complaint, (Mortgagee's Title Insurance Policy—Exclusions from Coverage), at 3(a), (c).

On the other hand, RTC contends that the title policy insured Mid–America against exactly the type of defect that ultimately manifested itself—the priority of several subsequently filed mechanics liens—regardless of whether additional loan funds remained undisbursed. Furthermore, Mid–America claims to have suffered a loss because the mechanics' liens would have been extinguished by the trustee's sale if the construction deed of trust had retained its priority. The price received at the trustee's sale was $828,000 short of the $8,028,000 actually disbursed to the project under the loan agree-

---

**3.** The notice was to substantially comply with the following form:

As an inducement to Lawyers Title Insurance Corporation for issuing its title insurance policies without exception to filed or unfiled mechanics liens, Cardinal hereby designates this Project for inclusion under the Revolving In-

demnity Agreement between Cardinal and Lawyers Title dated June 5, 1986 as provided in paragraph 1 of such Agreement.

**4.** The balance of the loan ($880,000) was for disbursement if 96% occupancy of the project was timely achieved.

ment. With such a shortfall, any liens inferior to the deed of trust would have been eliminated. On the other hand, any liens having priority over the deed of trust, as these did, would have to be paid by the property owner or be satisfied out of the property.

Finally, RTC claims that any *implied* limitations arising from the express language of the policy are precluded by federal law.

Neither party seeks to prove contractual intent by reference to parol evidence. Rather, the complaint and counter-complaint only seek a construction of the terms and provisions contained within the policy.

### III.

### A.

■ The parties' dispute is one of contract interpretation. Under Tennessee law, "It is the Court's duty to enforce contracts according to their plain terms. . . . [In doing so,] the entire contract should be considered in determining the meaning of any or all of its parts." *Cocke County Bd. of Highway Comm'rs v. Newport Utility Bd.*, 690 S.W.2d 231, 237 (Tenn.1985). Furthermore, "[t]he contract should not be given a forced, unnatural or unreasonable construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion or render the policy nonsensical and ineffective." *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn.Ct. App.1982). Additionally, "the insuring clause and exceptions thereto should not be considered separately, but as parts of a whole. . . ." *White v. State Farm Mut. Auto. Ins. Co.*, 59 Tenn.App. 707, 718, 443 S.W.2d 661, 666 (1969). Further, exclusionary clauses are to be strictly construed against the insurer. *Palmer v. State Farm Mut. Auto. Ins. Co.*, 614 S.W.2d 788 (Tenn.1981); *see also American Savings and Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 782 (6th Cir. 1986).

### B.

■■ Upon a motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *accord Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When considering cross-motions for summary judgment, the court addresses "each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). Moreover, the fact that both parties have submitted motions for summary judgment does not require the court to find that no issue of material fact exists. *Id.* (citing *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948)).

■ However, "[i]n contract actions, summary judgment may be proper when the documents in question are undisputed and 'reveal that there is no question as to intent.'" *Manley v. Plasti–Line, Inc.*, 808 F.2d 468, 471 (6th Cir.1987) (quoting *10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure* § 2730.1 at 279–80 (2d ed. 1983)). *See also First Nat'l Bank of Jackson v. Pursue Energy Corp.*, 799 F.2d 149 (5th Cir.1986) (summary judgment proper where contract is unambiguous); *Falmouth National Bank v. Ticor Title Insurance Co.*, 920 F.2d 1058, 1061 (1st Cir.1990) (application of insurance policy terms to undisputed facts is question of law).

### IV.

As noted, the title companies identify the issues as:

A) Whether Mid–America (now RTC) would suffer any loss if coverage is denied and it's title to the property is subjected to the lien claims.

B) Whether Mid–America would receive a windfall profit if the title companies must pay the lien claims.

C) Whether the lien claims were (i) created, suffered, assumed or agreed to or (ii) resulted in no loss to Mid–America.

## A.

■ Plaintiffs' first argument focuses upon the $892,000 in undisbursed construction loan funds under the original construction loan when the Partnership defaulted. Plaintiffs contend that because the total cost to cure the mechanics' liens and complete the project was less than the undisbursed construction loan funds, defendant would not suffer loss or damage as a result of the mechanics' liens having priority over the insured deed of trust if it, the defendant, had to pay the lien claims.[5]

■ Plaintiffs argue that just because there is a defect in the title due to the priority of the mechanics' liens, it does not follow that there is a loss due to such defect. Mortgagee title insurance, such as Mid–America obtained from plaintiffs, does not guarantee the state of title but is an agreement to indemnify the mortgagee from any actual loss. *Falmouth Nat'l Bank*, 920 F.2d at 1062–63.

Plaintiffs would look exclusively to the loan commitment Mid–America made *to the Partnership* as the starting figure for calculation of defendant's loss. In this vein, plaintiffs cite *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103 (8th Cir.1980), and *Bankers Trust Co. v. Transamerica Title Ins. Co.*, 594 F.2d 231 (10th Cir.1979) for support. In both cases the courts held that the lender was not entitled to have the title company pay the lien claims. In *Bankers Trust*, the construction lender contended that it was entitled to recover under the title insurance policy because mechanics' liens had attached to the property. In that case the liens attached when the borrowers and their guarantors failed to put up the necessary funds to cover construction costs in excess of the construction loan. Foreclosure resulted prior to the exhaustion of the committed loan funds which were sufficiently ample to pay the

mechanics' liens. Without any substantial explanation of its reasoning, the court held:

> Where, as here, work was performed and payment was not made up to the amount of the lender's loan commitment, the resulting mechanics' liens must be considered to have been created or suffered by the insured claimant and such liens are expressly excluded from coverage by the language of the title policy.

*Bankers Trust*, 594 F.2d at 234. The court did not hold that the lender had not suffered any loss although the lender had undisbursed loan funds still in hand which exceeded the lien claims.

*Brown* involved similar facts to *Bankers Trust*. There, however, the district court concluded that it was the title insurance company's duty under the policy to discharge the mechanics' lien claims and its failure to do so constituted a breach of that policy. The district court also held that since the insurance policy and loan agreement did not oblige the lender to continue funding after default in order to avoid the filing of liens, the lender's foreclosure did not cause the lien to arise.[6] The Eighth Circuit reversed in a two-to-one decision based on the persuasiveness of the *Bankers Trust* decision. Judge Arnold dissented for the reasons given by the district court.

However, both these cases are inapposite on the first issue raised by plaintiffs. In each case the parties to the mortgagee title insurance policy had *also* entered into a concurrent disbursement agreement. In both cases, the courts found that the presence of the additional disbursement agreement created an *implied duty* to provide adequate funds to satisfy any charges incurred prior to default. *E.g., Bankers Trust*, 594 F.2d at 233 (Disbursement Agreement provision requiring insurer/disbursing agent to obtain lien waivers "clearly contemplated that adequate funds were to be made available to Transamerica in order to satisfy the claims."); *Brown*, 634 F.2d at 1110 (relying

---

5. It is undisputed that Mid–America's loan disbursements were not made to pay for the work and materials which gave rise to the mechanics' liens at issue.

6. The district court's opinion is set out at 478 F.Supp. 1041 (E.D.Mo.1979).

on *Bankers Trust;* "the parties contemplated that [the lender] would provide adequate funds to pay for work completed prior to the default.").

The fact that committed funds under the loan agreement remained undisbursed has no bearing on the potential or actual lien losses under the title policy *unless* or *until* an actual or implied duty arises between the parties to the title policy to provide the funds. In *Bankers Trust* and *Brown,* this duty was impliedly created by the disbursement agreement. However, absent a contractual relationship ancillary to the insurance contract at issue, there was no implied duty between these parties that all committed loan funds must have been expended.

Here no such agreement existed. Mid-America disbursed the loan proceeds to the Partnership. Plaintiffs' sole function in that process was to determine whether any liens had been filed and notify Mid-America prior to issuing an endorsement increasing its coverage under the policy. Since Mid-America had no express or implied duty to the title companies to continue funding the project after default, even for work materials provided after the last draw request, any requirement that the lender must itself pay the lien claimants would result in a loss to the lender. Mid-America's recovery on the loan, as established by the successful foreclosure bid, was inadequate to fully cover prior loan advances, much less to cover any additional payments to clear the liens.

### B.

Plaintiffs next claim that the defendant would receive a windfall profit if the mechanics' liens are required to be paid by the insurer rather than the insured. Again, this assertion falls wide of the mark.

The insuring clause of the policy specifically provides that coverage is extended for any "statutory lien for labor or material which now has gained or hereafter may gain priority over the lien of the insured mortgage." (Exhibit A to Complaint, Mortgagee Title Insurance Policy). These types of liens are specifically insured against because if the trust deed is foreclosed upon, any liens which have gained superiority are not extinguished.

Therefore, the insured's interest would be encumbered to the extent of any such superior liens and its recoverable security thereby reduced.

However, junior liens are satisfied out of any excess proceeds of the sale *after* the trustee has fully satisfied the lender's lien in the deed of trust. *Third Nat'l Bank v. McCord,* 688 S.W.2d 446 (Tenn. Ct.App. 1985). If no funds remain after partial or total satisfaction of the lender's lien, the junior lien is extinguished. *Id.* Thus, the insured lender is protected to the full extent of his expenditures or the full amount of the sale proceeds, whichever is greater, but no more.

The record establishes without dispute that the plaintiffs contracted for a fee to insure Mid-America against losses due to statutory liens which "gain priority over the lien of the insured mortgage." As a result of the liens filed in this case, the lender, who did not recover all of the monies it disbursed under the loan agreement, would be out of pocket and therefore lose an additional amount equal to the lien claim settlements if they are not covered liens. There is no profit in this case, much less a windfall profit. The issue is who must suffer the loss. Given the unambiguous and plain terms of the policy coverage language, the title company accepted the risk of unpaid labor and materialmen's liens. It did this for a fee, relying on the affidavits and guaranty of the borrower, the Partnership, and its parent company, Cardinal Mortgage. The fact that this risk has matured cannot now be avoided by the argument that the insured lender must accept additional losses on this loan due to exactly one of the contingencies for which the title policy was acquired—unpaid lien claimants. A smaller loss does not constitute a windfall profit and if the title company's contract placed them in an untenable position, it is only because that is coverage the agreement they executed. The court agrees that the unambiguous language of the policy placed the title company in the unenviable position of having to pay off lien claims that under different circumstances might well have been paid by the loan funds, but that is what their contract provides.

## C.

Lastly, plaintiffs claim that the mechanics' liens were: (1) "created, suffered, assumed or agreed to" by Mid–America, or (2) "result[ed] in no loss or damage" to the defendant, and are therefore excluded from coverage under the policy.[7] On this issue, the court concludes that the principles of law set forth in *American Savings,* 793 F.2d 780, control the court's legal analysis.

In *American Savings,* American Savings and Loan Association ("American"), loaned $1,000,000 to a group of developers whose financial backing had failed mid-way through the construction project. American received a deed of trust to secure the loan. When recorded, the deed of trust was superior to any other lien. At the same time that it issued the loan to the developers, American obtained a mortgagee's title insurance policy from Lawyers Title Insurance Corp. which, like the instant policy, did not contain an exception for any unfiled mechanics'/materialmen's liens that might subsequently obtain priority over the deed of trust. Further, both American and Lawyers were aware that the deed of trust was being recorded after commencement of construction.

Ultimately, the developers could not meet their debts resulting in several lien claims which gained priority under *Tenn.Code Ann.* § 66–11–104. American settled these lien claims, sold the property to a third party, and brought suit against Lawyers to recover the difference between its liabilities and the amount it had received at the sale.

The Sixth Circuit, applying Tennessee law, discussed the precise issue before the court. Construing insuring provisions and exclusions in a mortgagee title insurance policy that were virtually identical to those at issue here, the court held that the title insurance policy insured the lender "against the risk that subsequent liens for services, labor or materials would gain priority to its lien securing the construction loan." 793 F.2d at 786.

In doing so, the court discussed the meaning of the first phrase in this exclusion clause:

[A]ccording to the general application of the terms, American cannot be held to have suffered or assumed the risk of future service, labor or materials liens by financing only a portion of the construction project rather than funding the full actual completion cost. Although no Tennessee cases construe the terms "created, suffered, assumed or agreed to" in the context of title insurance exclusions, their meaning is fairly well established in other jurisdictions.

The term "created" has generally been construed to require a conscious, deliberate and sometimes affirmative act intended to bring about the conflicting claim, in contrast to mere inadvertence or negligence. Similarly, the term "suffered" has been interpreted to mean consent with the intent that "what is done is to be done," and has been deemed synonymous with "permit" which implies the power to prohibit or prevent the claim from arising. Further, an insured does not assume an assessment against property "merely because he agreed to take the property 'subject to' any assessments." "Assume," under this definition requires knowledge of the specific title defect assumed. And "agreed to" carries connotations of "contracted," requiring full knowledge by the insured of the extent and amount of the claim against the insured's title. As with the other terms, this definition implies some degree of intent.

The Eighth Circuit summarized these definitions:

The cases discussing the applicability of the "created or suffered" exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured or the insured either expressly or impliedly assumed or agreed to the defects or

---

7. The court has already held that because the lender had no express duty to pay for the work and materials underlying the liens, the lender would suffer a loss if the title policy does not cover the liens and the lender must pay them.

encumbrances in the course of purchasing the property involved. The courts have not permitted the insurer to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss.

Brown v. St. Paul Title Ins. Co., 634 F.2d 1103, 1107–08 n. 8 (8th Cir.1980).

Moreover, the application of exclusionary clauses such as the one at issue here often turns on notions of equity. To the extent that an insured has breached an obligation or would derive a windfall profit from recovery against its insurer, courts are more inclined to find that the insured created, suffered, assumed or agreed to the defect, lien or encumbrance. Cf. Brown, 634 F.2d 1103; Bankers Trust, 594 F.2d 231.

American Savings, 793 F.2d at 784 (numerous citations and footnote omitted).

The American Savings court focused its analysis on the "suffered" or "assumed" terms inasmuch as Lawyers' counsel conceded that American had not created or agreed to the mechanics' liens within the meaning of the policy. Id. at 784 n. 1. Here, plaintiffs principally challenge the "created" and "suffered" terms.

As noted above, the Sixth Circuit has construed the "created" term as requiring a "conscious, deliberate and sometimes affirmative act intended to bring about the conflicting claim." Id. Plaintiffs argue that the refusal to advance loan funds constituted such an act. However, this assertion misapprehends the causal connection between Mid–America's refusal to disburse the final amount and the filing of the liens. It was not Mid–America's refusal to make the final loan disbursement that caused the liens to be filed. The liens were filed prior to the Partnership's default and prior to Mid–America's refusal. Here, the only affirmative act by Mid–America was the innovation of its contractual right to accelerate the note against the defaulting Partnership.

The Sixth Circuit also stated that "[t]he term 'suffered' has been interpreted to mean consent with the intent that 'what is done is to be done,' and has been deemed synonymous with 'permit' which implies the power to prohibit or prevent the claim from arising." Id. See also Arizona Title Ins. & Trust Corp. v. Smith, 21 Ariz.App. 371, 519 P.2d 860 (1974). Thus, where "create" entails an affirmative action, "suffer" would seem to entail a failure to act to prevent the claim.

However, if the court were to construe the term "suffer" to mean that a lender who acts to protect his security interest must also protect the interests of others by paying obligations not owed by the lender, the court would be defeating the very purpose for providing the lender with the security interest and the title policy in the first place. It would also put an unnatural strain on the intent and meaning of the contract term.

In American Savings, Lawyers Title argued that the lender "implicitly suffered or assumed the mechanics' liens that it settled by not assuring that there was adequate funding to complete the construction project." 793 F.2d at 785. The court in response noted that the lender had put the full amount of its loan commitment at risk and it therefore had no committed funds to satisfy the lien claims. The court, however, did not hold that a lender who acquires a title insurance policy against unrecorded liens owes an obligation to the insuror to pay any liens that accrue so long as it has not expended all of the funds which it agreed to loan on the project. Nor did the title policy contain such a requirement. Had the insurance company intended to exclude any project liens so long as the loan commitment was not fully funded, it could certainly have provided for it in the title policy. It did not do so and this court should not imply such an exclusion in the contract simply because it would now appear to make good business sense to have it.

In American Savings, the court noted that the Supreme Court of Tennessee

has further cautioned against relieving an insurer of a once attractive decision that has soured.

Insurers, just as other makers of contracts, are dependent upon the fiscal attractiveness of their proposals in order to induce would be purchasers to buy.

In the case of insurance, the attractiveness, necessary to induce buyers, is found in the broadness of coverage, or the lack of limiting conditions. Where an insurer, with due regard to its own financial liability, writes the contract without certain limiting conditions, and thereby hopefully enhances his selling position, the Court will refuse to then withhold from the buyer the coverage for which he has contracted by adding conditions unwarranted by a reasonable construction of terms of the policy as issued.

*Swindler v. St. Paul Fire & Mar. Ins. Co.,* 223 Tenn. 304, 444 S.W.2d 147, 150 (1969). In the present case these principles inform against a broad construction of the exclusionary clause phrase "created, suffered, assumed or agreed to."

*American Savings,* 793 F.2d at 783.

The Sixth Circuit also noted in *American Savings* that there could not be a windfall profit since the lender had expended all committed loan funds. The court did not, however, hold that a lender who has already suffered a loss on a defaulted project derives a windfall profit if it is not required to increase that loss by paying lien claims which were insured against by the title policy. There is no windfall profit here. Mid–America contracted for insurance against loss due to mechanics' liens. It gets no more than the contract provided.

The simple fact that is controlling in this case is that two sophisticated business entities entered into this contract—the title policy. It insured against losses due to unrecorded liens on this project. It did not exclude lien coverage until all loan funds were expended. It did not exclude liens that arose from work and materials for which loan funds had not already been advanced. To rewrite the contract to add these provisions is beyond the power of this court.

■ Under Tennessee law, exclusionary clauses are strictly construed against the insurer. *Palmer v. State Farm Mut. Auto. Ins. Co.,* 614 S.W.2d 788 (Tenn.1981). Thus, construing the "created, suffered, assumed or agreed to" language of this exclusion clause, the court holds that the plain language of the

contract and the case law construing it do not support plaintiffs' argument that Mid–America "created, suffered, assumed or agreed to" the liens in question when it refused to expend its own funds to pay for a risk insured against in the title policy. This portion of the exclusion clause is therefore inapplicable.

In summary, plaintiffs' motion for summary judgment is denied inasmuch as Mid–America: (1) was not under any obligation to release the loan funds after its borrower's default, and thus would suffer a loss if required to pay the lien claimants; (2) will not receive a "windfall" as the insured mortgagee under the policy; and, (3) is not subject to the policy exclusions.

### D.

Much, if not all, of the court's discussion and analysis is equally applicable to consideration of the defendant's motion for summary judgment. Defendant claims that the terms of the policy are unambiguous and specifically provide coverage for mechanics' and materialmen's liens that subsequently obtain superiority over the mortgagee's deed of trust.

The pertinent policy language reads: "[T]he Companies, jointly and severally insure ... against loss or damage ... sustained or incurred by the insured by reason of: ... Any *statutory lien for labor or material* which now has gained or *hereafter may gain priority over the lien of the insured mortgage ...*." The policy language quoted unambiguously contemplates coverage if such liens attain priority over the deed of trust and a loss results.

The contract terms contained within the Mortgagee's Title Insurance Policy are unambiguous and provide coverage against mechanics' and materialmen's liens filed subsequent to the deed of trust which might attain superiority of the insured deed of trust. Furthermore, no Exclusions from Coverage contained within the terms of such policy are applicable to the instant case. Defendant is therefore granted summary judgment on its counterclaim for declaration of coverage under the policy.

Plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

The defendant shall prepare and submit to plaintiffs for approval as to form a judgment which declares that counter-defendants are required under Exhibit A to the Complaint to provide insurance coverage for the lien claims heretofore identified and stipulated to by the parties, and that the plaintiffs shall recover nothing on the claims asserted against defendant. The judgment shall be tendered to the court within 10 days of the entry of this order.

IT IS SO ORDERED.