35 N.J. Super. 36 (1955)
113 A.2d 47
TRAD TELEVISION CORP., A CORPORATION, PLAINTIFF-APPELLANT,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, A BODY CORPORATE OF CONNECTICUT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1955.
Decided April 1, 1955.
*37 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Benjamin Edelstein argued the cause for appellant (Messrs. Edelstein & Edelstein, attorneys).
Mr. Robert V. Carton argued the cause for respondent (Messrs. Durand, Ivins & Carton, attorneys; Mr. J. Victor Carton, of counsel).
*38 The opinion of the court was delivered by JAYNE, J.A.D.
The plaintiff in this action unsuccessfully sought the recovery from the defendant of insurance occasioned by the plaintiff's loss of cash in the amount of $1,350.
The policy of insurance issued by the defendant to the plaintiff contractually supplied to the insured the following indemnity:

"II. Loss Outside Premises
(a) For all loss of money and securities occurring outside the premises and caused by the actual destruction, disappearance or wrongful abstraction thereof while being conveyed by a messenger within any of the States of the United States of America, the District of Columbia, Alaska, Hawaii, Canada or Newfoundland; and (b) For all loss of or damage to property caused by robbery or attempt thereat outside the premises while such property is being conveyed by a messenger within the aforesaid territorial limits."
It was expressly contemplated by the terms of the policy that the "messenger" might be the insured or a partner or officer of the insured, or any person who is in the employ of and duly authorized by the insured to have the custody of money while being conveyed outside the premises designated in the instrument.
At the conclusion of the introduction of the evidence submitted on behalf of the plaintiff, the defendant rested without tendering any additional proof and applied for a judgment of dismissal of the action, which motion was granted. The plaintiff by the present appeal impugns the propriety of the judgment.
The factual account of the circumstances must therefore be acquired from the testimony of the plaintiff's witnesses. The ensuing narrative is, we think, adequately revelational.
On Friday, April 24, 1953, one George Trad, vice-president of the plaintiff corporation, had in his possession cash in the amount of $1,500 consisting of bills of $50 and $100 denominations. It was the money of the plaintiff corporation, and the fund was intended to be furnished to one Robert Edwards, another officer of the plaintiff, to be appropriately expended by the latter at an auction to be held at Bayway, New Jersey, on the following Tuesday, April 28, 1953. The *39 plaintiff's place of business is situate in Asbury Park, possibly a drive by automobile of an hour and fifteen minutes distant from Bayway.
It eventuated that Trad met Edwards and some other friends at the former's apartment at Deal on the Friday evening of April 28, 1953, where Edwards and his companions at about 8:30 P.M. purposefully importuned Trad to accompany them to a nearby modern caravansary known as Green Grove Manor. There Trad discovered the presence of some 30 persons associated with him in the plaintiff's business who had, unknown to him, assembled to celebrate the anniversary of his birth.
In previously changing his clothes that evening, Trad had transplanted the $1,500 in cash and deposited it in the right-hand pocket of the trousers he donned. He also carried in his clothing about $30 or $40 of his own money.
It is reported by the testimony that Trad participated in the gaiety of the surprise party with high spirits and a merry heart until about 4:00 A.M. on the following morning. Following their departure from the night club, Edwards and the two others hereinbefore mentioned reposed with Trad in his apartment at Deal until about 8:30 A.M., when Edwards resolved to depart and return to his home in New York over the weekend. He awakened Trad and requested from him the $1,500 cash.
Evidently it had not previously occurred to Trad to deliver the money to Edwards. Trad forthwith reached into the pocket of the trousers in which he had placed the money and discovered there only three $50 bills and between $10 and $14 of his own money. The $1,350 of the company's money was missing. Vigilant searches of the apartment and of the night club were unproductive.
An indulgence in the variety of conjectural suppositions anent the manner in which the $1,350 was lost is unnecessary. There was evidence of the insurance and of the loss. The coverage enveloped such a loss if caused by actual destruction, disappearance, wrongful abstraction, robbery, or attempted robbery outside the plaintiff's premises.
*40 The pivotal question is, did the loss of the money occur while being conveyed by a messenger?
The applicable terms of the insurance policy and the reasonably contemplated compass of their effective indemnification seem to be distinctly intelligible. The obligation of the plaintiff was to disclose by competent proof that the loss was in fact embraced by the insurance coverage, and the obligation of the court was to enforce the insurance contract as it finds it written. Kupfersmith v. Delaware Ins. Co., 84 N.J.L. 271, 275 (E. & A. 1913); Caruso v. John Hancock, etc., Insurance Co., 136 N.J.L. 597, 598 (E. & A. 1948); James v. Federal Insurance Co., 5 N.J. 21, 24 (1950); Steiker v. Philadelphia Nat. Ins. Co., 7 N.J. 159, 166 (1951); Flint Frozen Foods, Inc., v. Firemen's Ins. Co. of N.J., 8 N.J. 606, 610 (1952); Parker v. Niagara Fire Ins. Co., 30 N.J. Super. 585 (App. Div. 1953).
A limited precursory research of the decisions of our own state courts has failed to uncover a comparable previous judicial consideration of the range of a policy of precisely like terms encompassing the loss of money or securities in such anomalistic circumstances.
In the determination of the present case little, if any, aid can be derived from decisions more contrastive than comparative. We can, however, become indebted to some of them for the generally accepted definition of the word "messenger."
"`A "messenger" is defined by Webster to be "one who bears a message or an errand; the bearer of a verbal or written communication, notice, or invitation from one person to another, or to a public body; an office servant."' The term, by its fair import and significance, does not apply to a public officer acting in an original capacity in the discharge of duties imposed upon him by law, `but presupposes a superior in authority, whose servant the messenger is, and whose mandate he executes, not as a deputy, with power to discriminate and judge, or to bind his superior, but as a mere bearer and communicator of the will of his superior.'"
Life & Casualty Ins. Co. of Tennessee v. Bottoms, 225 Ala. 382, 143 So. 574, 575 (1932). Probable source of definition, *41 Pfister v. Central Pac. R. Co., 70 Cal. 169, 11 P. 686, 690 (1886).
Without doubt the commonly recognized signification of the characterization of a messenger is indicative of one who performs the special or particular service of a bearer or carrier in transmitting the message or communication or in transporting the object essentially in the capacity of a bailee.
In the prosecution of the present action it must be acknowledged that the burden initially devolved upon the plaintiff not only to establish in a prima facie degree that Trad was a messenger, but also that the money was lost while being conveyed by him as such.
First and foremost, we do not perceive that the circumstances disclosed by the uncontroverted evidence tended to sustain the logical conviction that Trad came into possession of the money in the capacity of a messenger as distinguishable from his official position as vice-president of the plaintiff company, and moreover, secondly, that he had yet undertaken the pursuit of a messenger service.
His possession of the money was that of the plaintiff corporation. There was no bailment and, indeed, the transportation, the contemplated purpose of which was intended to be performed on or before the following Tuesday, had not begun. The latter conclusion becomes inevitabe from the admitted fact that Edwards was regularly employed in the same building with Trad, actually present with Trad at the premises of the plaintiff on Friday, and in Trad's immediate company during that evening and throughout the night.
We conclude, as did the trial judge, that the plaintiff's evidence failed adequately to prove that the loss of the money occurred while it was being conveyed by a messenger within the import and meaning of the insurance policy.
Affirmed.