ARTHUR N. SWINDLER, JR.

*v.*

THE ST. PAUL FIRE & MARINE INSURANCE COMPANY.

444 S.W.2d 147.

(*Jackson,* April Term, 1969.)

Opinion filed June 9, 1969.

Opinion of Petition to Rehear filed August 27, 1969.

NEWTON P. ALLEN and J. KIRBY RIFFEL, Memphis, for appellant.

LEO BEARMAN, JR., and JOSEPH A. HEFFINGTON, III, Memphis, for appellee.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

In this case the Court is asked to construe a provision in an insurance policy, issued by appellee to appellant. The operative facts, stated briefly, are that the appellant while conveying his bank deposit to the bank inadvertently mingled it with some business letters and deposited it in a mail depository. Despite appellant's requests, postal authorities would not grant him entrance into the depository in order to retrieve the packet. At the next sched-

uled opening of the depository, the packet was not found therein, nor was it ever again accounted for except by the receipt by appellant's bank of a portion of its contents from an anonymous sender.

Appellant claims coverage for the resulting loss of $1,500.00 under the terms of his policy with appellee. The applicable provision of this policy states:

"Coverage B—Loss Outside the Premises.

"To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger or any armored motor vehicle company, or while within the living quarters in the home of any messenger."

Upon appellee's denial of the claim suit was brought by appellant in Shelby Equity Court. Upon the Chancellor's dismissal of the action, appeal was made directly to this Court upon a stipulated statement of the facts involved.

In arguments and in their briefs both parties have concentrated upon the terms "disappearance * * * while being conveyed," as being determinative of the case. Appellant argues, in the main, that "disappearance" was complete at the time the packet was dropped in the depository. Both parties agree that the packet was being conveyed until that time. The appellee argues, contrarily, that "disappearance" did not take place until the unknown time subsequently when the packet "disappeared from" the depository, and that the claim was rightly refused in that the packet was not being conveyed at that time. Hence, in the definition and application of the term "disappearance" rests the difference of view between the parties and the disposition of the case.

Fortunately, despite the fact that no Tennessee decisions have been cited, and none have been found, to aid in the construction of this term, the Court does not have to operate in a vacuum. There exists an abundant backlog of principles of construction applicable to insurance contracts which the Court has accepted in the past.

■ One such principle is that, absent ambiguity, the terms of a contract of insurance are to be construed according to their plain, ordinary, popular sense unless they have acquired a technical sense in commercial usage. *In re Estate of Clement*, 220 Tenn. 114, 414 S.W.2d 644; *Interstate Life & Acc. Ins. Co. v. Gammons*, 56 Tenn. App. 441, 408, S.W.2d 397; *Moore v. Life & Cas. Ins. Co.*, 162 Tenn. 682, 40 S.W.2d 403.

■ This Court has further held that the "ordinary meaning" envisioned is the meaning which the average policy holder and insurer would attach to the term. *Farmers Mutual Fire Ins. Co. of Knox County v. McMillan*, 217 Tenn. 125, 395 S.W.2d 798. It appearing that neither party understood the term "disappearance" to be a word of art, or it to have taken any peculiar meaning in commercial usage, it seems that the word should be defined in its ordinary, or customary sense. Standard dictionaries define the word variously as: "to cease to appear or be present from a particular vantage point." "to pass from sight or view," "to vanish from sight," "to be no longer seen", etc. There being no evidence to the contrary, it would seem that such dictionary definitions are consonant with the meaning an average policy holder would attach to the term.

Were the Court to stop here, it would be but a simple step to agree with appellant's contention that the packet's "disappearance" was complete for purposes of the pol-

icy's applicability when it simply passed from sight as it vanished into the mail depository.

The Court, however, realizes that single terms within an insurance contract, or any contract, do not stand alone. This realization is manifest in the adherence of courts to the universally accepted construction rule of *ejusdem generis*. It is also implicit in the Court's holdings that insurance contracts are to be construed from their four corners in such a manner as to give effect to the intention of the parties and to their express language. *Interstate Life & Acc. Ins. Co. v. Gammons*, supra. It is realized that the context in which a word is used may so limit or expand the connotation of the term as to alter the meaning that the average policy holder or insurer would attach to it. In the present provision "disappearance" is adjoined by the terms "destruction" and "wrongful abstraction", both of which contain connotations of the inability of the custodian to recover the property so lost. It might be wise to so limit the operation of the term "disappearance". Hence, not every packaging or misplacement of money or securities which place the money out of the sight of the custodian would result in liability, but only a "disappearance" of the money in such a manner that immediate retrieval is not possible. Such a limitation, however, would not affect the outcome of the instant case, it appearing that appellant had no access whatever into the mail depository.

Appellee's contention that this construction of the term would result in all manner of ridiculous and spurious claims is not well taken. Stated expressly within the policy provision itself is the insurer's protection against

such claims. It must be a *"loss"*, *"by"*, *"disappear-ance"*, *"while being conveyed,"* by the persons and in the manner set out. The simple limitation that loss must be occasioned by the disappearance rules out the conse-quences of which appellee seems so apprehensive.

A study of the cases cited by appellee, in which our sister States have considered provisions similar to the one being considered here, will serve to illustrate the amount of protection which courts have given the insur-ers in their construction of the term "while being con-veyed" as well as demonstrating the distinguishing characteristics between those cases and the instant case. In the much cited *Monteleone v. American Employers' Insurance* decision, 239 La. 773. 120 So.2d 70 [1960] the loss was occasioned by the messenger's leaving the money in his home from which it was lost. The case was decided upon the ground, and properly so, that the mes-senger had ceased to convey the money, and hence had ceased to be a bona fide messenger under the provisions of the policy.

In *Sansone v. American Insurance Co.*, 245 La. 674, 160 So.2d 575 [1964], which reaffirmed the *Monteleone* case, the court again disallowed recovery upon the ground that the carrier had ceased to be a messenger. There, considering a provision exactly the same in all pertinent parts as the one here being considered, the court, con-cerned with the ceasing to convey concept, explained: "Significant, in our opinion, is the fact that the restau-rant manager had turned aside from his function as a messenger to engage in an evening of social activities."

In *Cleveland Avenue Liquor Store, Inc. v. Home In-surance Co.*, 115 Ga.App. 864, 156 S.E.2d 202, the mes-

senger left the packet of money in his car while eating lunch, and it was again held that the messenger was not acting in his capacity as messenger at the time of loss and hence recovery was denied. In *Trad Television Corp. v. Hartford Accident and Indemnity Co.*, 35 N.J.Super. 36, 113 A.2d 47, the vice president of the firm lost the money while at a party. It was held that he was not a messenger at the time of loss. Again, in *J & C Drug Company v. Maryland Casualty*, 298 S.W.2d 516 [Mo. App., 1957], the would be messenger had turned aside from his role as messenger to indulge in other activities, and it was upon that basis that recovery was disallowed. In all the above, there was an actual voluntary act of the carrier which resulted in his ceasing to be a messenger and ceasing to even attempt to convey by any direct means the valuables entrusted to his care. Hence, even though these cases illustrate the amount of protection which the insurer has against claimants who fail to satisfy this limitation of the policy, they have no bearing upon the instant case, it being conceded that appellant was continually conveying the money until the time of its disappearance into the depository.

Besides the limitations appellee has written into the policy, and the protection courts have given the insurer from liability based on an application of these limitations, appellee would have this Court reject the ordinary definition of the term here and give insurer added protection by saying that "disappearance" really means something more like "mysterious disappearance." To do so would be to add limitations not contracted for by the parties. Insurers, just as other makers of contracts, are dependent upon the fiscal attractiveness of their proposals in order to induce would be purchasers to buy. In the case of insurance, the attractiveness, neces-

sary to induce buyers, is found in the broadness of coverage, or the lack of limiting conditions. Where an insurer, with due regard to its own financial liability, writes the contract without certain limiting conditions, and thereby hopefully enhances his selling position, the Court will refuse to then withhold from the buyer the coverage for which he has contracted by adding conditions unwarranted by a reasonable construction of terms of the policy as issued.

█ Hence, the Court is of the opinion that, upon these facts, when the money fell into the depository, thereby denying the messenger sight as well as access, the loss occasioned thereby was the type loss such a policy would reasonably be envisioned to cover, and was a "disappearance * * * while being conveyed," under a proper construction of the policy. It thus appears the insurer should be liable. The Chancellor's dismissal is hereby reversed, and judgment entered here against appellee for the $1,500.00 loss.

OPINION ON PETITION TO REHEAR

Counsel for the insurance company has filed herein a very forceful and dignified petition to rehear. Since this has been filed we have read and re-read it several times and have re-read the original briefs herein as well as the policy and our original opinion. After doing so, we are convinced beyond a shadow of a doubt that the opinion is a correct interpretation of the clause of the insurance policy as applied to the facts of this particular case.

In the outset we are courteously and forcefully criticized for making this statement: "In arguments and in their briefs both parties have concentrated upon the terms 'disappearance * * * while being conveyed,' as

being determinative of the case.'' It is argued that instead of this being the determinative point in this case that really the determinative point in their brief was, and it was forcibly argued before the bar of the Court, ''that the policy does not cover 'disappearance * * * while being conveyed by a messenger', but rather 'loss * * * by disappearance * * * while being conveyed by a messenger'.'' We think this is merely playing with words which are clearly covered by what we have said in our opinion. In other words, if it had not been lost after it disappeared then there would have been no lawsuit, but by its disappearance and our interpretation of the meaning under such policy it is clearly a loss.

On page 3 of the original brief of the insurance company it is said:

''When Arthur Swindler inadvertently dropped his bank deposit bag, filled with cash, into a mail box, heard the bag hit the bottom of the box, and yet made no effort to guard or remain near said box until it was opened by the postal authorities, and it was discovered that the deposit bag was missing when the mailbox was opened; did this loss occur *while being conveyed by a messenger,* as required under the policy of insurance?

''The Chancellor answered this question 'NO'. Your appellee respectfully submits that this answer is correct.''

Then on page 7 of this excellent brief of the insurance company again it is said:

''I. The Chancellor was correct in holding that the loss did not occur 'while being conveyed by a messenger' as required by the terms of the policy.

"The sole issue before the Court is whether or not Mr. Swindler's claim falls within the following policy provision:"

Then follows the policy provision which we quoted in our opinion. Following this the brief continues:

"It will be seen that the operative words in the above quoted provision are 'while being conveyed by a messenger.' "

Again on page 13 of the insurance company's brief it is said:

"Simply put, the money had ceased to be conveyed by Mr. Swindler, in his capacity as messenger, the moment he placed his deposit in the mailbox. It would take a terribly strained construction of the policy to extend coverage to one who, through no fault but his own, has ceased to be a messenger conveying property at the time of the loss. Mr. Swindler's facts place him outside the risk that both parties agreed to have covered."

Lastly to further illustrate that in our construction of the original arguments herein and the answers thereto and in our interpretation of the language of the policy, we think we were correct, and on page 17 the insurance company again says of the word "disappearance":

"Rather the Court is faced with the entirety of the insuring clause, which requires that the loss occur *while the property is being conveyed by a messenger'.*"

We are more than satisfied that in the original briefs and argument made before this Court every conceivable thing was argued and said and authorities cited that is now cited on this petition to rehear, even though some

of the present argument on the petition to rehear is phrased in a little different manner. It is true in our original opinion we confined ourselves and cited cases in point under this particular state of facts and the clause of the policy which is interpreted, but there must always be a first time otherwise there never would have been any decisions on any question. We are more than satisfied that under the factual situation here and the language of this policy and for the reasons set forth in our original opinion that the policy covers such loss. After having fully considered the petition to rehear we are satisfied that it should be denied, which is done.