# IN THE COURT OF APPEALS OF TENNESSEE
# FILED

**December 3, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## AT NASHVILLE

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE | ) | |
| SUMNER COUNTY EMPLOYEES' | ) | |
| TRUST FUND ON BEHALF OF | ) | |
| THE SUMNER COUNTY | ) | |
| EMPLOYEES' TRUST, | ) | Sumner Circuit |
| | ) | No. 14647-C |
| Plaintiff/Appellee, | ) | |
| | ) | |
| VS. | ) | Appeal No. |
| | ) | M1997-00069-COA-R3-CV |
| RUBY GRAVES, | ) | |
| | ) | |
| Defendant/Appellant, | ) | |
| | ) | |
| and son, JERRY D. GRAVES, | ) | |
| | ) | |
| Defendant. | ) | |

APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE

For the Plaintiff/Appellee:

William R. Wright

For the Defendant/Appellant:

C. Tracey Parks

Leah May Dennen
Office of the Law Director
Gallatin, Tennessee

Harsh, Parks & Harsh
Gallatin, Tennessee

# VACATED IN PART AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# OPINION

This appeal involves a dispute over the obligation of a member of a group health insurance plan to reimburse the plan for medical payments made on behalf of the member's dependent. The plan's administrator requested the member and her dependent to reimburse the plan for the medical payments after discovering that the dependent had received a financial settlement from the person who caused the dependent's injuries. When the member and the dependent refused to reimburse the payments, the plan filed suit in the Circuit Court for Sumner County against both parties. The trial court granted the plan's motion for summary judgment and ordered both the member and her dependent to reimburse the plan for medical payments. We have determined that the plan was not entitled to a judgment as a matter of law against the member and accordingly vacate the summary judgment against her.

## I.

Ruby Graves works for the Sumner County Board of Education. County employees like Ms. Graves participate in a group health insurance plan established and maintained by the Sumner County Employees' Trust and administered by Blue Cross/Blue Shield of Tennessee. The plan permits its members to purchase individual coverage, family coverage, or coverage for themselves and one designated eligible dependent.[1] Ms. Graves elected to purchase coverage for herself and her son, Jerry Graves.

Jerry Graves was seriously injured three months after his eighteenth birthday while riding as a passenger in an automobile owned and driven by Erik Vincent. Jerry Graves incurred $8,622.95 in medical expenses which were paid by the Trust. Sometime later, he received $18,000 for his injuries in a settlement with Mr. Vincent's insurance company. The settlement check was made out solely to Jerry Graves, and Ms. Graves received no part of the settlement proceeds.

When Blue Cross/Blue Shield learned of the settlement, it requested Ms. Graves and her son to reimburse the Trust for the payments for medical expenses it had made on behalf of Jerry Graves. Despite the reimbursement provision in the health insurance policy, both

Ms. Graves and her son declined to reimburse the Trust. Accordingly, in September 1995, the Trust filed suit against Ms. Graves and Jerry Graves in the Circuit Court for Sumner County seeking a judgment against them for $8,622.95 plus attorney's fees and costs. Ms. Graves filed an answer denying any obligation to reimburse the Trust. Jerry Graves did not file an answer and made no other response to the suit.

The Trust later moved for a summary judgment against both Ms. Graves and her son. Ms. Graves opposed the motion on the ground that she had no legal obligation to reimburse the Trust for the medical payments made on her son's behalf. The trial court granted the summary judgment and entered an order directing Ms. Graves and Jerry Graves to pay the Trust $8,622.95 for the medical payments and $1,452 for its legal expenses. Ms. Graves has appealed.

## II.

We begin with the well-settled standards governing appellate review of summary judgments. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *See Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Tomlinson v. Kelley*, 969 S.W.2d 402, 405 (Tenn. Ct. App. 1997). They are not, however, appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). A summary judgment should not be granted if any reasonable doubt exists with regard to the conclusions to be drawn from the evidence. *See Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538 (Tenn. 1998).

Unlike other dispositions by a trial court without a jury, a summary judgment does not enjoy a presumption of correctness on appeal. *See Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn. 1997); *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). Accordingly, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the nonmoving party, and we must

resolve all inferences in the nonmoving party's favor. *See Terry v. Niblack*, 979 S.W.2d 583, 585 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *See Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

Because the material facts in this case are essentially undisputed, the outcome of this appeal depends solely on the proper interpretation of the group health insurance contract. Interpreting contracts is, of course, a question of law.[2] *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Accordingly, a summary judgment proceeding was an appropriate avenue for resolving the parties' dispute. *See Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998); *Miller v. Mabe*, 947 S.W.2d 151, 153 (Tenn. Ct. App. 1997).

## III.

Reimbursement provisions are commonplace in employer-provided health insurance plans. The typical reimbursement provision requires the insured to repay the insurer for payments made on the insured's behalf if the insured ultimately recovers from the person who caused the insured's injury. *See York v. Sevier County Ambulance Auth.*, ___ S.W.3d ___, ___ (Tenn. 1999).[3] The benefit to the insured of a reimbursement provision in a group health plan is that the insured receives immediate payment for covered medical expense. However, any such payments are merely advances that must be repaid once the insured finally collects from the party at fault. *See Waller v. Hormel Foods Corp.*, 950 F. Supp. 941, 944 (D. Minn. 1996); *Gibson v. Country Mut. Ins. Co.*, 549 N.E.2d 23, 26 (Ill. App. Ct. 1990).[4]

The exact parameters of an insurer's right to reimbursement depend on the specific language of the plan or policy at issue. As with other clauses in insurance policies, courts will enforce reimbursement provisions in an employee benefit plan according to their plain meaning. *See Wood v. Prosser*, No. 01A01-9510-CV-00468, 1997 WL 311529, at *3 (Tenn. Ct. App. June 11, 1997) (No Tenn. R. App. P. 11 application filed). We will consider reimbursement provisions in the context of the policy as a whole, *see Demontbreun v. CNA*

*Ins. Co.*, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991), and in construing them, we will not give them such a forced, unnatural or unreasonable construction as would lead to nonsense or absurdity. *See Mid-South Title Ins. Corp. v. Resolution Trust Corp.*, 840 F. Supp. 522, 526 (W.D. Tenn. 1993).

The group health insurance plan booklet[5] for Sumner County employees contains a reimbursement provision. In a subsection entitled "Rights of Recovery and Reimbursement," the booklet states that if the county employee or an insured dependent is injured due to the fault of another person and the insurance company pays the insured person's medical expenses, then

> You[6] [the primary insured] or your covered dependent must reimburse us for our payment of medical expenses if you also receive payments for these expenses from any other source. This right of reimbursement is in addition to, and separate from, our right of subrogation and is primary -- even if the payments you or your covered dependent receive are for other types of damages or expenses. This also applies if the person recovering such amounts is a minor.

The question to be answered by this appeal is whether the phrase "you or your covered dependent must reimburse us . . ." means that both the insured and the covered dependent are jointly liable to reimburse the insurer for payments made on behalf of the covered dependent. The Trust asserts that the liability is joint; while Ms. Graves asserts that it is not.

As we construe this policy, covered dependents are insured parties in their own right. This concept runs throughout the policy and is reflected in the use of terms such as "covered subscriber or dependent," "you or a dependent," or "you and a covered dependent." The plan booklet even points out that "[i]t is important that you [the primary insured] keep separate records of the eligible medical expenses for yourself and each of your eligible dependents since the deductible and the maximum amounts are calculated separately for each of you." Accordingly, under the terms of the policy involved in this case, a covered dependent's rights and obligations are independent from those of the primary insured.

The independence of the rights and obligations of the insured parties points to a conclusion that the liability for reimbursing the insurer is not joint. This conclusion is consistent with the rule that an insured who actively seeks an insurance policy's protections may not take the benefits afforded by the policy and simultaneously not fulfill the policy's

obligations. *See Nationwide Mut. Ins. Co. v. Chantos*, 214 S.E.2d 438, 443 (N.C. Ct. App. 1975). Thus, as a general matter, only the insured who invokes the benefits of an insurance policy should have the obligation to reimburse the insurer. *See Employers Mut. Liab. Ins. Co. v. Byers*, 114 A.2d 888, 890 (N.H. 1955).

The application of this general rule in factual circumstances similar to this case is illustrated in a recent decision by the Arkansas Court of Appeals. The primary insured was a public school employee whose group health insurance covered her nineteen-year-old daughter as a dependent. The insurer paid the daughter's medical expenses after she was injured in an automobile accident. The daughter later settled with the person who caused her injuries. When the daughter declined to reimburse the insurer for the medical payments made on her behalf, the insurer sued the daughter based on the reimbursement provision in the group insurance policy. Invoking the principle that personal liability for reimbursement follows the extension of benefits, the Arkansas Court of Appeals held that just as the injured daughter had the right to call upon the policy for benefits, so the insurer had the reciprocal contractual right, upon extending benefits to the daughter, to recoup these payments from her. *See Storey v. Arkansas Blue Cross & Blue Shield, Inc.*, 704 S.W.2d 176, 177 (Ark. Ct. App. 1986).

Insurance policies, like other contracts, should be construed to give effect to the parties' intentions and the language used to express these intentions. *See Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). Words used in an insurance policy should be given their ordinary meaning, unless the policy itself gives the words some other, more technical import. *See Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996); *Swindler v. St. Paul Fire & Marine Ins. Co.*, 223 Tenn. 304, 307, 444 S.W.2d 147, 148 (1969). Accordingly, the courts should construe an insurance policy keeping in mind the "understanding and reasonable expectations of the average insurance policyholder," *Harrell v. Minnesota Mut. Life Ins. Co.*, 937 S.W.2d at 810, rather than the more sophisticated understanding of a "Philadelphia lawyer." *Paul v. Insurance Co. of N. Am.*, 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984).

No one in this case, not even Ms. Graves, insists that the policy language does not give the Trust an unambiguous contractual right to seek reimbursement from Jerry Graves. However, nothing in the language of the policy reasonably puts Ms. Graves, the primary beneficiary, on notice that he or she will be required to reimburse the Trust for medical

expenses advanced on behalf of an adult dependent when that dependent subsequently recovers those expenses from a third party.  The Trust's argument that Jerry Graves would not have been insured had his mother not been able to obtain group health insurance coverage for him does not require a different conclusion because, as we have already held, the language of the policy itself requires the rights and obligations of each of the persons insured by the policy to be considered independently.

Equally unavailing is the Trust's argument that its payments for Jerry Graves's medical expenses were, in effect, on Ms. Graves's behalf.  The argument would have more weight if Jerry Graves had been a minor when he was injured.[7]  However, Jerry Graves was legally emancipated from his mother when he was injured, *see* Tenn. Code Ann. § 1-3-113 (1994); *Garey v. Garey*, 482 S.W.2d 133, 135 (Tenn. 1972), even though he continued to live at home.  *See Nichols v. Atnip*, 844 S.W.2d 655, 659 (Tenn. Ct. App. 1992).  Jerry Graves was legally liable to the health care providers for the medical care he received following the September 1994 accident.  The health care providers could not have required Ms. Graves to pay for these services.  Accordingly, the payments made by the Trust benefitted Jerry Graves, not his mother, and the Trust must look exclusively to the person who benefitted directly from the payments for reimbursement.

## IV.

We vacate the summary judgment against Ruby Graves and remand the case to the trial court with directions that the complaint against her be dismissed.  We also tax the costs of this appeal to Sumner County Employees' Trust for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____

SAMUEL L. LEWIS, JUDGE