# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### SEPTEMBER 18, 2000 Session

## RAIN AND HAIL INSURANCE SERVICES, INC. v. JAMES DREW PEELER, ET AL.

### Direct Appeal from the Circuit Court for Tipton County
### No. 4697;  The Honorable Joseph H. Walker, III, Judge

---

### No. W1999-01962-COA-R3-CV - Filed January 9, 2001

---

This is a suit for the recovery of an insurance premium.  The Appellant brought a complaint against the Appellee in the Circuit Court of Tipton County, seeking to recover the premium it claimed was due pursuant to a clause in the insurance policy.  Both the Appellant and the Appellee brought motions for summary judgment.  The trial court dismissed the Appellant's complaint and granted the Appellee's motion for summary judgment.

The Appellant appeals the decision of the Circuit Court of Tipton County dismissing the Appellant's complaint and granting the Appellee's motion for summary judgment.  For the reasons stated herein, we affirm the trial court's decision.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Marti L. Kaufman, for Appellant

Randy S. Gardner, for Appellee

### OPINION

### I.  Facts and Procedural History

The Appellee, James Drew Peeler ("Mr. Peeler"), is a farmer in Tipton County, Tennessee. In March, 1994, Mr. Peeler obtained a crop insurance policy through Halls Insurance Agency ("Halls"), an agent of the Appellant, Rain and Hail Insurance Services, Inc. ("Rain and Hail").  Rain and Hail is an insurance company that has a contract with the Federal Crop Insurance Corporation ("FCIC") for the purpose of issuing crop insurance policies to insure farmers against losses due to certain crop disasters.

Shirley Spiller ("Ms. Spiller"), an insurance agent at Halls, dealt with Mr. Peeler regarding his application for crop insurance. Mr. Peeler states that he accurately and truthfully provided all information requested of him by Ms. Spiller. Mr. Peeler claims that he pointed out the location of his property on the government actuarial maps Ms. Spiller provided,[1] and he informed her of the crops he would plant, other parties having an interest in the crops, and the acreage involved. Ms. Spiller contends that she did not specifically recall asking Mr. Peeler whether his property was subject to flooding or checking the government actuarial maps with Mr. Peeler.[2]

In December, 1994, Mr. Peeler submitted a claim under the insurance policy for crop losses due to insect infestation and drought. An insurance adjuster acting on behalf of Rain and Hail inspected the damage to Mr. Peeler's property. After examining the government actuarial maps, the adjuster determined that a portion of Mr. Peeler's property covered under the insurance policy was located in a flood area and should be subject to a high risk classification.[3] Mr. Peeler asserts that the classification was erroneous because the property had never been subject to flooding. Mr. Peeler claims that the adjuster agreed that the property should not be classified as high risk; however, the adjuster reported the high risk classification to Halls, which reported the information to Rain and Hail.

In January, 1995, Rain and Hail increased Mr. Peeler's premium from $5,487.00 to $26,302.00. Rain and Hail cites the following provision in its insurance policy to justify raising Mr. Peeler's premium: "If you misreport any information, we may revise the premium and/or liability for the farm unit to the amount we determine to be correct or to conform with the information reported." Rain and Hail states that Mr. Peeler had an affirmative duty to consult the government actuarial maps to determine whether his property was subject to a high risk classification and to report such classification to the insurance company. Noting that government actuarial maps are readily available, Rain and Hail asserts that it is customary in the industry for an insured to know whether his property is subject to a high risk classification and to report such classification to the insurance company. Rain and Hail argues that Mr. Peeler failed to report that his property was subject to a high risk classification; thus, Mr. Peeler misreported information which allows Rain and Hail to raise the insurance premium pursuant to the insurance policy.

---

[1]The FCIC issues government actuarial maps to insurance companies. Insurance agents use the government actuarial maps to determine a property's geographical location, elevation, or the appropriate risk factors to assign to the property.

[2]Ms. Spiller states that her normal procedure is to ask the insured whether his property is subject to flooding. If the insured answers affirmatively, Ms. Spiller then asks the insured to point out the property on a government actuarial map. Ms. Spiller states that she does not consult the government actuarial map if the insured states that his property is not subject to flooding.

[3]A high risk classification, also called a AAA rating, causes an increase in an insured's premium. As in the case at hand, a high risk classification can result from property with a high potential for flooding.

Mr. Peeler argues that he did not misreport or fail to report any information requested by Ms. Spiller, Halls, or Rain and Hail. Rather, Mr. Peeler contends that he had no knowledge that the property was subject to a high risk classification and had never been advised of such. Mr. Peeler claims that the property had been insured the previous year without difficulty and at normal premium rates. He asserts that the property has no history of flooding due to its location high on a bluff away from the nearest body of water. Mr. Peeler further contends that the government actuarial maps were in the exclusive possession of Rain and Hail, and he had no access to government actuarial maps or other information regarding his farm property. Mr. Peeler claims that after Rain and Hail classified his property as high risk, he applied to the United States Department of Agriculture to have the property removed from the high risk rating. Mr. Peeler contends that with the Department of Agriculture's assistance, he has insured the property at regular premium rates with other crop insurance companies since the spring of 1995.

Rain and Hail filed a complaint against Mr. Peeler in the Circuit Court of Tipton County to recover the premium it claimed was due pursuant to a clause in the insurance policy. Both Rain and Hail and Mr. Peeler filed motions for summary judgment. The trial court found that the burden was not on Mr. Peeler to investigate actuarial information prior to entering into the insurance contract with Rain and Hail. The trial court dismissed Rain and Hail's complaint and granted summary judgment in favor of Mr. Peeler, stating that a rational trier of fact could not find that Mr. Peeler misreported information to Rain and Hail. This appeal followed.

## II. Standard of Review

Summary judgment is appropriate only where the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. See Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993); Tenn. R. Civ. P. 56.04. We review the summary judgment motion as a question of law in which our inquiry is *de novo* without a presumption of correctness. See Finister v. Humboldt Gen. Hosp., Inc., 970 S.W.2d 435, 437-38 (Tenn. 1998); Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn. 1997). We must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Byrd, 847 S.W.2d at 210-11. If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate. See Robinson, 952 S.W.2d at 426; Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).

## III. Law and Analysis

The sole issue presented for our review is whether the trial court erred in granting summary judgment to Mr. Peeler. Rain and Hail argues that it demonstrated several genuine issues of material fact to prevent the trial court from granting Mr. Peeler's motion for summary judgment. In support of its argument, Rain and Hail asserts that the term "misreport" is a potentially ambiguous term such that a jury should determine the issue. Rain and Hail also argues that Mr. Peeler "misreported" information in violation of the terms of the insurance policy because he failed to discover and report whether his property was subject to a high risk classification.

-3-

Insurance contracts should be construed like other contracts to give effect to the parties' intention and express language. See Blaylock & Brown Constr., Inc. v. AIU Ins. Co., 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). The language in an insurance policy should be given the usual, natural, and ordinary meaning. See NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co., 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997); Ballard v. North American Life & Cas. Co., 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983). "'Ordinary meaning' of the terms of a policy is the meaning which the average policyholder and insurer would attach to the term, and a settled and widely accepted meaning accorded to a particular phrase is persuasive in the interpretation of an insurance policy thereafter using such phrase." 15 Tenn. Juris. *Insurance* § 24 (1984) (quoting Parker v. Provident Life & Accident Ins. Co., 582 S.W.2d 380 (Tenn. 1979); Swindler v. St. Paul Fire & Marine Ins. Co., 444 S.W.2d 147 (Tenn. 1969)).

Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. See Moss v. Golden Rule Life Ins. Co., 724 S.W.2d 367, 368 (Tenn. Ct. App. 1986). An ambiguity in a contract is characterized as "doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." Hillis v. Powers, 875 S.W.2d 273, 276 (Tenn. Ct. App. 1993). The parties to a contract cannot create an ambiguity where none exists. See Edwards v. Travelers Indem. Co., 300 S.W.2d 615, 617-18 (1957). Where the language of an insurance policy is reasonably susceptible of two meanings, we are obligated to give the particular language the interpretation most favorable to the insured. See NSA DBA Benefit Plan, 968 S.W.2d at 795.

The insurance policy in the case at bar did not define the term "misreport." Rain and Hail argues that an insured has an affirmative duty to determine if his property is subject to a high risk classification and report such classification to the insurance company; the failure to do so is encompassed by the term "misreport." Mr. Peeler argues that the term "misreport" means to report falsely or to provide false information. We can find no case law defining the term "misreport"; however, Random House Dictionary defines the term "misreport" as "to report incorrectly or falsely." Random House Unabridged Dictionary, (1993). We find that the definition provided by Mr. Peeler uses the common and ordinary meaning of the term. In our opinion, the term "misreport" is not reasonably susceptible to more than one meaning. For this reason, we find that there was no ambiguity regarding the meaning of the term "misreport."

When employing the plain and ordinary meaning of the term "misreport," we find that Mr. Peeler did not misreport information to Rain and Hail. The term "misreport" means to report incorrectly or falsely. To report incorrectly or falsely constitutes affirmative conduct rather than a failure to act. There is no evidence that Mr. Peeler reported false or incorrect information to Ms. Spiller, Halls, or Rain and Hail. There is nothing in the record to indicate that Mr. Peeler even had knowledge that his property was subject to a high risk classification. Because Mr. Peeler did not misreport information, the clause in the insurance policy permitting Rain and Hail to revise Mr. Peeler's premium is not applicable. We find that the trial court did not err in granting Mr. Peeler's motion for summary judgment.

## IV.  Conclusion

      For the foregoing reasons, the decision of the trial court is affirmed.  Costs of this appeal are taxed against the Appellant, Rain and Hail Insurance Services, Inc., for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE