J-A29036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NORTHWEST SAVINGS BANK, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| FIDELITY NATIONAL TITLE INSURANCE | : | |
| COMPANY AND THE CLOSING | : | |
| COMPANY OF PA | : | No. 451 WDA 2016 |

Appeal from the Order entered December 23, 2015
in the Court of Common Pleas of Butler County,
Civil Division, No(s): 13-11107

BEFORE:  DUBOW, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JANUARY 20, 2017**

Northwest Savings Bank ("Northwest") appeals from the Order granting the Cross-Motion for Summary Judgment filed by Fidelity National Title Insurance Company ("Fidelity"), and denying Northwest's Motion for Partial Summary Judgment.  We affirm.[1]

---

[1] As this appeal was filed from an Order dismissing only Counts I and II of the Amended Complaint, it appeared that Fidelity's counterclaim remained pending, along with Northwest's claims against The Closing Company of PA ("TCCPA").  Therefore, a Rule to show cause as to why this appeal should not be quashed as interlocutory was issued.  Northwest responded to the Rule, and indicated that the Order appealed from disposed of Fidelity's counterclaim.  Northwest further indicated that it would enter a default judgment against TCCPA.  Northwest thereafter submitted proof to this Court of the May 5, 2016 default judgment taken against TCCPA.  Having been presented with satisfactory evidence of finality, this court discharged the Rule on May 10, 2016, on the basis that the December 23, 2015 Order appealed has been rendered final and appealable.  Accordingly, Northwest's prematurely taken appeal has been perfected. ***See Johnston the Florist, Inc. v. Tedco Constr. Corp.***, 657 A.2d 511, 513 (Pa. Super. 1995) (holding that, when an appeal has been filed prior to the entry of judgment,

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 5/9/16, at 1-4.

On appeal, Northwest raises the following issues for our review:

1. Whether the [trial court] properly interpreted the title insurance policies at issue and relevant law to conclude that Northwest "assumed" or "agreed" to pre-existing mortgages intending to be paid off[?]

2. Whether the [trial court] properly used a "balancing of the equities" approach in contract interpretation to assert that [Northwest] consented to the existence of priority mortgage liens in a case requiring contract interpretation[,] and in light of the fact that TCCPA committed fraud solely within the scope of an authorized title insurance agent?

3. Whether the [trial court] erred as a matter of law by failing to consider the subsequent and intervening fraud of Fidelity's title insurance agent in connection with the closing protection letter issued by Fidelity?

4. Whether the [trial court] erred by concluding that no material facts remain in dispute, including a conclusion regarding an intent by Northwest to assume or agree to pre-existing mortgages?

Brief for Appellant at 2-3.

As Northwest's first and second issues are related, we will address them together. In its first issue, Northwest contends that, pursuant to the plain language of the final Loan Policy of Title Insurance ("the Final Policy") issued to Northwest by Fidelity, through its title agent, TCCPA, Northwest "was protected against [] defects in title, including any defect arising where

jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment).

Northwest would not have the priority lien." *Id*. at 16. Northwest argues that the trial court erred by finding that Fidelity was not bound by the language of the Final Policy, which, Northwest asserts, should indemnify it "against the exact occurrence which arose" in this case. *Id*. Northwest asserts that, in arriving at its conclusion that Northwest was not entitled to coverage, the trial court incorrectly interpreted the Section 3(a) exclusions, as set forth in the Final Policy. *Id*. Specifically, Northwest claims that the trial court erred by determining that Northwest "assumed" or "agreed" to the existing priority liens held by Citizens Bank of Pennsylvania ("Citizens") and Charter One ("Charter"), based on Northwest's knowledge of the liens prior to entering into the mortgage loan agreement with Thomas and Lisa McIntyre for the refinancing of their home ("the McIntyre transaction"). *Id*. at 16-17.

Northwest argues that, in reaching its conclusion, the trial court improperly concluded that an insured with knowledge of existing liens unequivocally assumes or agrees to those liens. *Id*. at 17. Northwest contends that the trial court's conclusion is contrary to industry practice and the holding and reasoning of *American Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780 (6th Cir. 1986), which, Northwest asserts, is the established standard for the interpretation of the Section 3(a) exclusions. Brief for Appellant at 17. Northwest contends that, in order to exclude title coverage, "the prospective insured must specifically know the

defects it wishes to assume and demonstrate some 'degree of intent' to take the property, and title insurance, subject to these defects." ***Id***. at 18 (citing ***Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.***, 2011 U.S. Dist. LEXIS 16446 (E.D. Pa. 2011). Northwest asserts that, where, as in this case, there is mere negligence or innocent conduct of the insured, title coverage should not be denied. Brief for Appellant at 18, 21. Northwest points to the holding in ***Beneficial Mut. Sav. Bank v. Stewart Title Guar. Co.***, 36 F. Supp. 3d 537 (E.D. Pa. 2014), and claims that the facts of that case are distinguishable from those in the instant case. Brief for Appellant at 20 (arguing that "Northwest has unequivocally affirmed, and documented throughout, that it intended to receive the first priority, and sole lien[,] against the McIntyre [p]roperty by the refinancing loan.").

Northwest argues that "there are no documents in this case revealing intent by Northwest to take anything less than the first priority mortgage" and that "Fidelity has relied solely on the language of the Final Policy that is ambiguous at best, and inapplicable under a proper analysis of ***Am[erican] Sav. & Loan***." ***Id***. Northwest contends that it "directed the title agent to pay[ ]off Citizens and Charter[,] and to provide Northwest with the first priority mortgage[,]" and "only accepted the issued Final Policy due to the misrepresentation of Fidelity's title agent removing the Citizens and Charter[] liens from the exceptions in the [F]inal [P]olicy received after the loan closing." ***Id***. at 20-21.

Northwest asserts that, despite acknowledging Northwest's innocence, the trial court erred by using a "balancing of the equities" approach to determine that Northwest "was in the better position to assume the risk in [the] transaction[,] and that the liens were not subject to coverage under the Final Policy." *Id*. at 21, 22. Northwest claims that "[t]he only conduct identified by the [trial c]ourt remotely relevant to any 'negligence' by Northwest was the fact that it forwarded the funds and payoff schedule to TCCPA[,] directing how the loan funds were to be distributed[,] to ensure that the proper parties received payment." *Id*. Northwest argues that it is "untenable to find that [this] conduct was in any way 'improper' much less something beyond 'mere negligence.'" *Id*. at 21-22.

In its second issue, Northwest contends that, despite its determination that both Northwest and Fidelity were largely blameless, the trial court erred by granting summary judgment in favor of Fidelity, "despite the issuance of a closing protection letter which indemnified [Northwest] if Fidelity's agent absconded with the proceeds." *Id*. at 23. Northwest asserts that "[t]his conversion was hidden from Northwest through the issuance of a Final Policy that deleted the exceptions to coverage and represented the existing mortgages to be paid." *Id*. Northwest claims that the trial court "committed a fundamental err[or] by resolving a question requiring strict contract interpretation" by using a "balancing of the equities" approach. *Id*. at 24. Northwest argues that the trial court "compounded the error by

failing to recognize the critical issue of TCCPA's fraud, *as the title agent*," in "misappropriating the funds advanced by Northwest for closing." **Id**. (emphasis in original). Northwest points out that TCCPA was involved in the McIntyre transaction both as the title agent and the settlement agent, and contends that the trial court erred by determining that "all of TCCPA's misdeeds were done in its role as a settlement agent, such as misappropriating the loan funds, and [were not] attributable to its role [as] Fidelity's authorized title agent." **Id**. at 24-25. Northwest asserts that "TCCPA's conduct, in stealing the [closing] funds and then issuing a title policy to cover its tracks and avoid a claim under the closing protection letter insured by Fidelity, straddle both the settlement agent and title agent roles." **Id**. at 25-26. Northwest claims that, when removing the Citizens and Charter liens from the Final Policy, TCCPA was acting in its role as authorized title agent. **Id**. at 26. Northwest argues that Fidelity was permitted to use the fraud of its own title agent to avoid liability under the closing protection letter. **Id**. at 27.

In its Opinion, the trial court addressed Northwest's first and second issues, set forth the relevant law, and concluded that the issues lack merit. **See** Trial Court Opinion, 5/9/16, at 5-8. We agree with the reasoning of the trial court and affirm on this basis as to Northwest's first and second issues. **See id**.

- 6 -

As Northwest's third and fourth issues are related, we will address them together. In its third issue, Northwest contends the trial court failed to recognize that, but for the fraudulent issuance of the Final Policy by TCCPA, Northwest would have had the opportunity to seek relief under the closing protection letter issued by Fidelity. Brief for Appellant at 28. Northwest asserts that TCCPA's actions constitute subsequent and intervening acts of fraud, which prevented Northwest from discovering the fraud or taking steps to act under the closing protection letter. *Id*. at 29. Northwest claims that the trial court's failure to recognize this fact, and permit Northwest to recover under the Final Policy or closing protection letter, constitutes reversible error. *Id*. at 31.

In its fourth issue, Northwest contends that the trial court failed "to acknowledge the uncontroverted factual record identifying that Northwest had no intent to assume and agree to the prior liens." *Id*. at 32. Northwest asserts that the trial court further erred by determining "that all misconduct performed by TCCPA is solely attributable to its role as a settlement agent without reference to the fraudulent title policy." *Id*. Northwest claims that discovery revealed genuine issues of material fact regarding instructions provided by Fidelity to its title agents. *Id*. at 33. Northwest argues that the evidence demonstrates that Fidelity routinely permitted the title agents to perform obligations with loan proceeds. *Id*. Northwest contends that, despite this evidence, the trial court "improperly determined that Fidelity did

not authorize TCCPA to handle any funds[,] and that Fidelity could not be liable for any action arising from that activity even though the closing protection letter issued by TCCPA[,] as a Fidelity agent[,] expressly indemnified against the closing agent absconding with settlement funds." *Id*.

In its Opinion, the trial court addressed Northwest's third and fourth issues, set forth the relevant law, and concluded that the issues lack merit. *See* Trial Court Opinion, 5/9/16, at 8-9. We agree with the reasoning of the trial court and affirm on this basis as to Northwest's third and fourth issues. *See id*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2017

Circulated 12/21/2016 04:33 PM

## IN THE COURT OF COMMON PLEAS BUTLER COUNTY, PENNSYLVANIA

| | |
|---|---|
| NORTHWEST SAVINGS BANK, | : CIVIL DIVISION |
| | : A.D. No. 13-11107 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| FIDELITY NATIONAL TITLE | : |
| INSURANCE COMPANY, THE | : |
| CLOSING COMPANY OF PA, and | : |
| JEFFREY A. GARBINSKI, | : |
| | : |
| Defendants. | : |

Yeager, J.                                                                    May 9, 2016

### RULE 1925(a) OPINION

The Appellant, Northwest Savings Bank (hereinafter "Appellant" or "Northwest"), appeals from the Order of Court under date December 23, 2015, simultaneously granting Appellee's, Fidelity National Title Insurance Company (hereinafter "Appellee" or "Fidelity"), Cross-Motion for Summary Judgment and denying Appellant's Motion for Partial Summary Judgment.

The facts and history of the instant matter are as follows. This case presents a claim for damages in breach of contract as a result of a title insurance policy under date of September 30, 2009, issued by the Appellee, Fidelity National Title Insurance Company, to the Appellant, Northwest Savings Bank.

In September, 2009, Thomas McIntyre and Lisa McIntyre, owned property located in Butler County, Pennsylvania. Said property was, at that time, encumbered by two priority mortgages. The first priority lien was held by Citizens Bank of Pennsylvania (hereinafter "Citizens"). The second priority lien was held by Charter One (hereinafter "Charter"). During the aforesaid time period, the McIntyres agreed to enter into a mortgage loan agreement with Northwest, to refinance their property and extinguish the two existing priority lien holders. When entering into said agreement, Northwest was aware of the priority liens held by Citizens and Charter.

On or about September 7, 2009, The Closing Company of Pennsylvania (hereinafter "TCCPA"), acting as Fidelity's policy issuing agent[1], issued to Northwest a Commitment for Title Insurance with respect to the McIntyres' refinance loan. The Commitment for Title Insurance required Northwest to discharge the Citizens and Charter priority loans for the forthcoming title insurance policy to become effective.

At some time subsequent to the issuance of the aforesaid Commitment for Title Insurance, Northwest forwarded to TCCPA funds that, through the instructions given by Northwest to TCCPA, were to be disbursed or otherwise transferred in satisfaction of the Citizens and Charter priority loans. Fidelity issued no instructions to TCCPA regarding the disbursement or transference of funds in satisfaction of the priority liens. Fidelity made no promises that Fidelity, or any agent of Fidelity, would accept and disburse funds in satisfaction of the priority liens held by Citizens and Charter.

---

[1] The agency agreement entered into between TCCPA and Fidelity limits the appointment of TCCPA "solely to countersign and issue title insurance commitments, binders, guarantees, endorsements, title insurance policies ..." Issuing Agent Agreement at § 1, Oct, 31, 2002. Further, the agreement specifically disallows TCCPA to "[r]eceive funds including escrow, settlement or closing funds, in the name of [Fidelity], but shall receive funds solely in [TCCPA's] name ..." Id. at § 2(B)(6).

2

On or about September 20, 2009, TCCPA, as the policy issuing agent for Fidelity, issued a Loan Policy of Title Insurance (hereinafter "Policy") to Northwest, without any exceptions for the priority liens of Citizens and Charter. At some point subsequent to the issuance of said Policy, Northwest was made aware that TCCPA did not disburse or transfer the funds forwarded to TCCPA for satisfaction of the priority liens of Citizens and Charter. Rather, Jeffrey Garbinski, an officer of TCCPA, misappropriated the funds. As a result of said misappropriation, Citizens and Charter, the priority lienholders, were not paid off.

In early 2013, Citizens and Charter commenced foreclosure actions against the McIntyres' property. Because Northwest is not a priority lienholder, a demand was made by Northwest against Fidelity to protect it from any loss that may be suffered by Northwest as a result of the foreclosure actions of Citizens and Charter. On or about May 29, 2013, Fidelity denied coverage and refused to acknowledge any indemnification of Northwest under the Policy. As a result, this action was commenced by Northwest in breach of contract.

Upon the close of discovery, the parties filed cross motions for Summary Judgment. *See* Appellant's, Northwest Savings Bank, *Motion for Partial Summary Judgment* under date of July 31, 2015; and Appellee's, Fidelity National Title Insurance Company, *Opposition to Plaintiff's Motion for Partial Summary Judgment and Fidelity's Cross-Motion for Summary Judgment* under date of August 31, 2015. Following argument on said Cross-Motions, the Court issued an Order and corresponding Memorandum Opinion under date of December 23, 2015, simultaneously granting Appellee's, Cross-Motion for Summary Judgment and denying Appellant's Motion for Partial Summary Judgment. *See Memorandum Opinion* and *Order of Court* under date of December 23, 2015.

3

Appellants subsequently filed a Motion for Reconsideration on or about January 4, 2016, which this Court denied after an argument on said Motion for Reconsideration on March 7, 2016. *See* Appellant's *Motion for Reconsideration* under date of January 4, 2016; and *Order of Court* under date of March 7, 2016. As a result, Appellants filed a Notice of Appeal to the Superior Court of Pennsylvania March 29, 2016, with respect to the Order of Court under date of December 23, 2015. *See Notice of Appeal* under date of March 29, 2016.

Upon receipt of said Notice of Appeal to the Superior Court of Pennsylvania, on or about March 28, 2016, in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, this Court entered an Order of Court wherein the Appellant was directed to file of record and serve upon the undersigned trial judge a Concise Statement of the Matters Complained of on Appeal no later than twenty-one (21) days from the date of the Order of Court. *See Order of Court* under date of March 28, 2016.

On or about April 15, 2016, the Appellant, Northwest Savings Bank, filed a Concise Statement of the Matters Complained of on Appeal pursuant to the Pennsylvania Rules of Appellate Procedure. The Appellant avers that this Honorable Court erred in the following ways:

1. The Court erred in interpreting the title insurance contract at issue and by concluding that Northwest "Assumed or Agreed" to the pre-existing mortgages which were intended to be paid off in the transaction.
2. The Court erred by engaging in a "balance of the equities" analysis in a case requiring contract interpretation.
3. The Trial Court erred by failing to consider the subsequent and intervening fraud of Fidelity's title agent and that material facts remain in dispute.

This Court considers the Appellant's, Northwest Savings Bank, contentions as follows:

4

To begin, as this matter was disposed of on cross-motions for summary judgment, the standard therefor is enumerated as follows:

According to Rule 1035.2(1) of the Pennsylvania Rules of Civil Procedure, a party may move for summary judgment as a matter of law after the relevant pleadings are closed. Specifically, the Rule states:

> "[W]henever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report..."

Additionally, the Note to Rule 1035.2 states, "An example of a motion under subparagraph (1) is a motion supported by a record containing an admission. By virtue of the admission, no issue of fact could be established by further discovery or expert report."

To this extent, summary judgment is appropriate only in cases that are clear and free from doubt. *Redland Soccer Club, Inc. v. Department of the Army and Dept. of Defense of the U.S.*, 696 A.2d 137 (Pa. 1997). Further, a court must view the record in the light most favorable to the non-moving party and resolve all doubts concerning the existence of a genuine material fact against the moving party. *Id.* Moreover, the Courts have held that for the purposes of summary judgment, a material fact is one that directly affects the outcome of the case. *Kenney v. Jeanes Hosp.*, 769 A.2d 492 (Pa.Super. 2001). As such, it is not the Court's function to decide any issues of fact, but to solely determine whether there is a genuine issue of material fact to be tried. *McDonald v. Marriott Corp.*, 564 A.2d 1296 (Pa.Super. 1989).

5

1.     **The Court erred in interpreting the title insurance contract at issue and by concluding that Northwest "Assumed or Agreed" to the pre-existing mortgages which were intended to be paid off in the transaction.**

The first argument presented in both parties' motions for summary judgment, and complained of on appeal by Northwest, concerns the alleged breach of contract by Fidelity in failing to provide coverage under the issued Policy of title insurance. To maintain a breach of contract claim, the Plaintiff must establish that a contract existed, a breach of that contract, and damages resulting therefrom. It is obvious to the Court that a contract existed. However, the Court cannot find a breach of that contract.

Fidelity cites to the "Exclusions" section of the issued Policy to support its Cross-Motion for Summary Judgment. Sections 3(a) and 3(e) of the Policy exclude from coverage any encumbrances "created, suffered, assumed, or agreed to by [Northwest]," as well as any encumbrances "resulting in loss or damage that would not have been sustained if [Northwest] had paid value for the Insured Mortgage." An insured will be deemed to have "agreed" to an encumbrance where said insured has "full knowledge … of the extent and amount of the claim against the insured's title." *Am. Sav. & Loan As'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 784 (6th Cir. 1986). While the previously cited case does suggest that some culpability is implied on the part of the insured in order for the carrier to be relieved of coverage, the principles of equity cannot dictate that the burden merely shifts to the insurance carrier where the closing agent was fraudulent but the insured is innocent. In fact, such an insurance exclusion has previously been applied in cases concerning the fraud of closing agents. *See Fidelity Nat. Title Ins. v. Consumer Home Mortgage*, 272 A.D. 2d 512, 514 (stating that "[w]here a loss is caused by the fraud of a third party, in determining the liability as between two innocent parties, the loss should fall on the one who enabled the fraud to be committed.")

6

Not only did Northwest know of the priority liens held by Citizens and Charter, it was the obligation of Northwest to pay-off the pre-existing mortgages to Citizens and Charter. In fact, that was the purpose of the loan funds. It is undisputed that it was not Fidelity who entrusted the funds to TCCPA as its agent; rather it was Northwest who forwarded the funds to TCCPA, and directed TCCPA in the proper procedure to disburse or otherwise transfer the funds. This case presents no claim by Northwest for vicarious liability, and further Northwest admits that TCCPA acted as a dual agent. It is the creation of that fiduciary type relationship by Northwest with TCCPA that excludes coverage under the Policy. The Court is being asked to determine the liability of two innocent parties and finds it only fitting that the party who enabled the fraud to take place should be charged with the loss therefrom. Northwest was free to charge another with the duty of acting as Northwest's agent to transfer the monies, but chose to entrust TCCPA.

Additionally, with respect to Section 3(e), the theft of those proceeds forwarded to TCCPA for satisfaction of the Citizens and Charter mortgages resulted in Northwest having failed to pay value for the mortgage it acquired on the McIntyres' property. If the funds had been properly transferred and full value had been paid for the mortgage on McIntyres' property, no harm would have resulted.

Thus; with no material fact in dispute, Fidelity did not breach the Policy by denying coverage thereunder. Unfortunately, Northwest seeks to be indemnified by a party that does not properly hold the fault or duty to do so.

7

2. **The Court erred by engaging in a "balance of the equities" analysis in a case requiring contract interpretation.**

Northwest's second complaint of this Court concerns a "balance of equities" analysis. However, this Court only considered principles of equity insofar as it applied to the reasoning behind why an insurer cannot be held liable for encumbrances known to the insured as a matter of policy in contract interpretation. While that reasoning, as set forth by case law, is provided above, it is not to suggest that this Court engaged in any analysis outside interpretation of the four corners of the Policy at issue.

3. **The Trial Court erred by failing to consider the subsequent and intervening fraud of Fidelity's title agent and that material facts remain in dispute.**

Appellant's final matter complained of first concerns the issue of TCCPA's agency. This agency was analyzed at length in this Court's Memorandum opinion under date of December 23, 2015. *See Memorandum Opinion*, p. 5, under date of December 23, 2015. That same analysis is laid out above. Through said analysis, and the record admission of Northwest's counsel discussed below, it is this Court's determination that TCCPA did act as a dual agent such that Fidelity cannot then be charged with liability in the creation of the fiduciary type relationship as created by Northwest between Northwest and TCCPA.

With respect to the second half of Northwest's third complaint and the explanation provided therefor, while the scope of an agency not prescribed by writing is generally a jury question, Northwest's counsel clearly indicated on the record that this Court could find an agency between TCCPA and Northwest. *See Transcript of Proceedings, Motion for Reconsideration*, p. 20, under date of March 7, 2016. Counsel further stated that with respect to the monies and directions given to TCCPA by Northwest to pay off the priority loans of Citizens and Charter, TCCPA was, in fact, acting as Northwest's agent. *Id.*

8

This record admission by Northwest's counsel indicates that, contrary to Northwest's matters complained of, there is not a genuine question of material fact concerning the dual agency of TCCPA. That a principle of TCCPA then mishandled the funds cannot then be charged to Fidelity as there was, factually and by admission of counsel, an agency between Northwest and TCCPA for the transfer of those funds to pay off the priority lien holders, if only for that limited purpose.

Thus, this Court finds that no genuine issue of material fact exists, and upon consideration of those agreed upon facts, Appellants', Northwest Savings Bank, Motion for Partial Summary Judgment was properly denied. Likewise, and for the reasons set forth hereinabove, the Appellee's, Cross-Motion for Summary Judgment was properly granted such that Count I and Count II of Appellant's Complaint in Civil Action was properly dismissed with prejudice.

As there has been no abuse of discretion and/or error of law in this Court's decision, the Appellant's, Northwest Savings Bank, appeal should be dismissed.

Respectfully submitted,

S. Michael Yeager
Judge

9